No. 81-431

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN RE THE MARRIAGE OF

DOROTHEA J. SCHULTZ,

        Petitioner and Appellant,

   -vs-

JACOB SCHULTZ,

        Respondent and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Big Horn, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        Anderson, Edwards & Molloy, Billings, Montana

    For Respondent:

        Kronmiller and Seykora, Hardin, Montana

Submitted on Briefs: June 17, 1982

Decided: August 11, 1982

Filed: AUG 11 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Action commenced by wife seeking dissolution of marriage and a property division. Petitioner filed in the District Court of the Thirteenth Judicial District in and for the County of Yellowstone. Findings of fact and conclusions of law were entered April 22, 1981, followed by judgment. Appeal followed directed specifically to the disposition of couple's property.

The parties to this action were married in 1936. For the 43-year duration of their marriage they farmed and ranched at various locations in south-central Montana. Respondent (hereinafter Jake) has a second grade education. Appellant (hereinafter Dorothea) was graduated from high school. Due to the parties' wide difference in educations, Dorothea handled the management and finances of the operations while Jake concentrated on the day-to-day functions. The record shows both Jake and Dorothea were hard workers and attempted to make the best of their debt-ridden business.

At the time appellant filed her petition for dissolution of marriage, and parties were farming and ranching north of Hardin, Montana, on 160 acres known as the home place which they purchased from Dorothea's father. Later, another 117 acres were purchased with the help of their son, Robert Schultz, known as the Orser Place. The parties improved and equipped the home place by borrowing substantial amounts of money from the FHA and the PCA. In addition they used funds which Dorothea received in a personal injury settlement and from money inherited from her uncle.

The parties accumulated a herd of cattle on the ranch which included four separate brands:

1. Bar D Lazy K, registered to Dorothea Schultz;

2. Lazy DJ Bar, registered to Jacob and Dorothea Schultz;

3. Bar CB, registered to Patricia Thomas;

4. Slash CC, registered to Robert and Dorothea Schultz;

- 2 -

The ownership of these four brands is disputed. The Bar D Lazy K brand was first established in 1950 by Dorothea Schultz. In 1971, Dorothea transferred the brand to a joint brand with Jake upon request by the FHA to qualify for a loan. When the loan was released Jake assigned his interest back to Dorothea. The Lazy DJ Bar is jointly owned by Dorothea and Jake without dispute. The cattle branded Bar CB were purchased in 1961 by Dorothea and then sold to the daughter Patricia Thomas. Since then the brand has always been registered in the daughter's name. When the brand Bar CB cows were calved-out through the years, some of the calves were sold and the proceeds used by Jake and Dorothea in their operations. The cattle branded Slash CC were purchased by Dorothea in 1975. Dorothea obtained a loan from the Little Horn Bank to pay for the cattle. When she couldn't repay the loan, the son, Robert Schultz, repaid the bank and Dorothea gave him a bill of sale for the cattle. The cattle were branded Slash CC and the brand was registered in the names of Robert and Dorothea Schultz.

In the District Court's findings of fact and conclusions of law the court found the total net worth of the parties to be between $94,116.51 and $153,599.51. The difference in amount is due to different appraisals of the real estate and cattle. The District Court's finding is as follows:

RECAP

ASSETS

| | | | |
|---|---|---|---|
| Real Property | $242,375.00 | to | $276,060.00 |
| Less sale of 59% interest | - 59,000.00 | | - 59,000.00 |
| Machinery | 19,100.00 | to | 31,750.00 |
| Crops | 5,000.00 | to | 7,908.00 |

Livestock

| | | | |
|---|---|---|---|
| C̄B̄ Brand | 15,730.00 | to | 15,800.00 |
| -Dⱴ Brand | 38,730.00 | to | 45,300.00 |
| /CC Brand | 9,450.00 | to | 10,900.00 |
| ⌂ J Brand | 16,500.00 | to | 18,650.00 |

| | | |
|---|---|---|
| Check | 8,729.33 to | 8,729.33 |
| Sub-Total | 355,614.33 to | 415,097.33 |
| Less $59,000.00, sale of 59% interest | - 59,000.00 | 59,000.00 |
| TOTAL ASSETS | $296,614.33 to | $356,097.33 |

LIABILITIES

| | |
|---|---|
| FHA | $180,030.17 |
| Little Horn State Bank | 14,722.65 |
| Miscellaneous | 7,745.00 |
| TOTAL LIABILITIES | $202,497.82 |

NET WORTH OF PARTIES TOGETHER

| | | |
|---|---|---|
| Assets | $296,614.33 to | $356,097.33 |
| Liabilities | 202,497.82 | 202,497.82 |
| TOTAL | $ 94,116.51 | $153,599.51 |

In the judgment the District Court ordered:

". . . that the property of the marital estate, both real and personal, including CB and /CC brand cattle shall be sold, and after payment of all indebtedness herein the net proceeds shall be divided between the parties except petitioner is entitled to be paid $25,000 over and above respondent's share...

"Sale of property set forth in the previous paragraph shall be accomplished by mutual agreement of the parties presented to this Court. If no agreement is reached, the court shall set the guidelines for the sale. The court would ratify an agreement allowing the petitioner's to retain the 'home place,' if the parties can do so, giving respondent his portion of the marital estate."

From this judgment petitioner appeals.

The issues presented for review are:

1. Whether the court had jurisdiction to include within the marital estate and to divide and order sold the cattle owned by and branded in the names of the adult children, Robert Schultz and Patricia Thomas.

2. Whether the court abused its discretion and acted contrary to the evidence when it included with the marital estate

the cattle with the wife's separate and personal brand, Bar D Lazy K.

3. Whether the court abused its discretion in failing to give the wife the right to purchase the home ranch before subjecting it to forced litigation.

Appellant argues the District Court erred by including the brands Slash CC and Bar CB, registered in the children's names, into the marital estate. There is no dispute that the brand, Bar CB is registered in the name of the daughter, Patricia Thomas, or that the brand, Slash CC is registered in the names of the son, Robert Schultz and Dorothea Schultz.

Appellant cites section 1-1-101, MCA:

> "A person, firm or corporation in whose name a mark or brand is recorded is entitled to the exclusive use of the mark or brand on the species of animal and in the position designated in the record. A copy of the record certified by the department is prima facie evidence of this right, and the certificate is also prima facie evidence that the person, firm or corporation entitled to use the mark or brand is the owner of all animals on which it appears in the position and on the species of animal stated in the certificate." (Emphasis supplied.)

This section was originally enacted as Section 5, Ch. 144 Laws of Montana (1921), codified as Section 3305, R.C.M. 1921. The language has remained unchanged since its enactment. In the case of State v. Keays (1934), 97 Mont. 404, 34 P.2d 855, this Court cited the section and stated: "Defendant argues that the certificates mentioned in the above section were the best evidence of ownership, and that it was error to admit the oral testimony of Rafesty upon this question. It is true that the certificates specified by the statutes would have been the best evidence. The admission of the oral testimony in the place of such certificates did constitute at least a technical error." This being a criminal case, the Court found other grounds upon which we could reverse. However, the rule that the certificate is the best evidence of ownership has never been overruled.

That does not mean that the presumption of ownership cannot

- 5 -

be rebutted. In Bohart v. Songer et al. (1940), 110 Mont. 405, 101 P.2d 64, we stated: "[n]ow the recorded brand establishes prima facie proof of ownership on which such brand appears. Of course, the prima facie evidence of ownership can be overcome by satisfactory evidence of transfer or relinquishment of a particular animal." In the present case there was no evidence of transfer or relinquishment of the disputed brands. The brands have always been in the children's names and thus the children are presumed the owners.

Respondent now claims he has an "interest" in the disputed brands because he fed and watered the cattle and took care of them on his land. He cites no authority which substantiates this claim of ownership. Respondent acknowledged that the children were the registered owners of the brands and never contested their ownership until the dissolution proceeding. The record shows the parents sold calves from the daughter's brand, Bar CB, and the proceeds were used in the operation of the ranch. The record does not show that the daughter was repaid for these calves. Respondent cannot argue he watered, fed and pastured the children's cattle without compensation as it seems the parents use of the proceeds from the daughter's calf sales provided equitable payment. We find no merit in respondent's contentions.

Appellant next argues the District Court abused its discretion when it included the wife's personal brand of cattle with the marital estate. The standard for reviewing the property division in a dissolution decreed by a District Court is well settled in Montana. The apportionment made by the District Court will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361, 364; In Re Marriage of Blair (1978), 178 Mont. 220, 583 P.2d 403, 405; Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072, 1074. The duty of the District Court is to consider the

statutory criteria and equitably apportion the marital assets. Each case must be looked at individually with an eye to its unique circumstances. In Re Marriage of Jacobson (1979), ____ Mont. ____, 600 P.2d 1183, 1186, 35 St.Rep. 1773, 1776; Aanenson v. Aanenson (1979), ____ Mont. ____, 598 P.2d 1120, 36 St.Rep. 1525, 1528.

Section 40-4-202, MCA states:

> "In a proceeding for dissolution of a marriage . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and [other factors] . . . The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit." (Emphasis added.)

This section makes it clear that the source of and title to marital property is irrelevant as to the division of such property upon dissolution of marriage. In Re Marriage of Brown, supra. The statute specifically states the District Court must equitably apportion the assets no matter in whose name lies title or for what source acquired. The section is not ambiguous. When we apply section 40-4-202, MCA, the relevant case law to the District Court's ruling we find no abuse of discretion but rather a correct interpretation of the law.

Appellant argues section 40-2-201, MCA, supports the wife's claim of ownership to her brand of cattle, the Bar D Lazy K. This section states, "Neither husband nor wife has any interest in the property of the other, except as mentioned in section 40-2-102, but neither can be excluded from the other's dwelling unless enjoined by a court." Section 40-2-201, MCA, does not apply in a proceeding for disposition of property.

Appellant claims that respondent had no interest in her personal brand of cattle and so expressed in a bill of sale of which purported to relinquish his interest in virtually all of the marital estate. Section 40-4-202, MCA, calls for an equitable

- 7 -

division of the marital estate by the court, regardless of however or whenever acquired or in whose name the property is held. In Re Marriage of Houtchens (1979), ____ Mont. ____, 592 P.2d 158, 160, 36 St.Rep. 501, 503. Whether or not a particular brand of cattle was registerd in the wife's name, or whether there was a questionable bill of sale which passed all of the husband's personal property to the wife has no bearing on the division of property mandate of section 40-4-202, MCA. Aside from the inclusion of the children's cattle in the marital estate we find no abuse of discretion by the District Court in its property division.

Finally, appellant argues the District Court abused its discretion by failing to give her the right to purchase the home ranch before subjecting it to forced litigation. Paragraph 5 of the District Court's judgment reads as follows:

> "5. Sale of property set forth in the previous paragraph shall be accomplished by mutual agreement of the parties presented to this court. If no agreement is reached, the court shall set the guidelines for the sale. The court would ratify an agreement allowing Petitioner to retain the 'home plan' if parties can do so, giving respondent his portion of the marital estate."

It does not appear that forced sale of the ranch was the only alternative as the appellant claims. The District Court clearly allowed the parties room to negotiate a buy-out on their own terms. It seems the parties would have an interest in negotiating their own terms as they are in a better position to know what they can afford and what they feel their interest is worth. Their incentive should be to avoid a forced sale which might not be as fruitful as a sale from one party to the other. Here forced sale was not ordered unless the parties could not reach an agreement. We find no error in the District Court's ruling.

For the above reasons, we remand the case to the District Court to modify the property division by excluding the children's cattle from the marital estate.

_____
Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____

_____
Justices