No. 81-428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN RE THE MARRIAGE OF

BEVERLY J. LARSON,

     Petitioner and Appellant,

-vs-

FRED J. LARSON,

     Respondent and Respondent.

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade, The Honorable
H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        Smith, Baillie & Walsh, Great Falls, Montana

    For Respondent:

        Alexander & Baucus, Great Falls, Montana

Submitted on Briefs:  June 10, 1982

Decided:  September 2, 1982

Filed:  SEP - 2 1982

*Thomas J. Kearney*
               Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On April 17, 1981, the Eighth Judicial District Court entered a decree which dissolved the marriage of petitioner and respondent, established child custody, support and visitation, divided the real and personal property comprising the marital estate, and ordered each party to pay his or her attorney's fees. This decree was amended June 10, 1981, and from that amended order, Beverly Larson appeals.

Petitioner raises the following issues on appeal:

1) Whether the District Court's valuation and division of the marital estate was adequate and equitable?

2) Whether the District Court should have awarded maintainence to Beverly Larson?

3) Whether the District Court should have required Fred Larson to pay Beverly Larson's costs and attorney's fees?

On the basis of the first issue we reverse the District Court's decision and remand this matter for reconsideration of the factors enumerated in section 40-4-202, MCA, as elaborated in this opinion. Maintainence and attorney's fees need to be reviewed after the District Court has adequately determined the value of the net marital estate and apportioned the estate in an equitable fashion.

FACTUAL BACKGROUND

Beverly and Fred Larson were married October 15, 1965. Both had been previously married and had children from those marriages. These children have attained majority. The issue of the Larson marriage are as yet minors, Valerie, age 14, and Andy, age 9.

At the time of the marriage Fred Larson was in the process of purchasing a piece of property known as the Thorn Place on a contract for deed. The purchase price was $6,000.00, with $1,500.00 down and the remaining $4,500.00 payable at

-2-

the rate of $100.00 per month beginning August 30, 1963. A balance of approximately $2,000.00 remained when the parties were married. The parties used jointly-acquired funds and the proceeds from the sale of a house Fred owned in Fairfield to pay the balance. Title to the Thorn Place was in Fred Larson's name.

The Larsons lived on and operated the Thorn Place until November, 1976, when the property was sold on a contract for deed at a price of $39,650.00. The parties received $11,500.00 as a downpayment and as of the hearing date, the balance on the Thorn contract was $26,893.04.

In 1970, the parties acquired as joint tenants a 160-acre piece of property referred to as the Bartlett Property. In 1976, the parties remodeled the house on the Bartlett Property using the downpayment they received on the Thorn Place. They moved into the Bartlett house in November of that year. The Bartlett Property was subsequently refinanced through the Federal Land Bank of Spokane, and as of the hearing date, the amount remaining on that loan was $28,900.00. The present fair market value of the Bartlett Property is $80,000.00.

The third parcel of property involved in this matter is the Davis Place. This 160-acre tract was purchased under a contract for deed in 1973. The purchase price was $32,000.00; the terms were $9.000.00 down with ten annual payments of $3,162.09. The title to the Davis Place was acquired in the names of Fred Larson, and his son, Martin Larson, then 20 years of age. A loan was obtained from the First National Bank of Fairfield to make the downpayment. Fred Larson was the named obligor on the loan and security included cattle and machinery on the Bartlett Property. Martin owned an unspecified number of cattle located on the Bartlett Property.

As of the hearing date, the balance due on the Davis Place contract was $18,987.00. The appraised value was $43,700.00.

Throughout the marriage and during the pendency of these proceedings, Fred Larson, with assistance from his son Martin, operated the various parcels of property as one economic unit, accounting for income and expenses on a common basis. The proceeds from the unified ranching operation, supplemented by Fred's wages from his employment by Greenfield Irrigation District as a ditchrider, were used to meet living and operating expenses and annual loan obligations. Beverly Larson cared for the children, numbering as many as five during some years of the marriage, and the home. She also tended the yard and chickens and occasionally helped out with small ranch chores and errands.

Beverly Larson filed a petition for dissolution of the marriage on December 21, 1977. Some forty months later the final dissolution decree was entered.

The District Court originally found the net worth of the marital estate to be $36,098.00 and awarded Beverly Larson the following property: a 1972 Chevrolet valued at $675.00, an oil and gas lease valued at $320.00, household furniture and appliances worth $1,875.00, and twenty-five thousand dollars ($25,000.00) in cash, ten thousand ($10,000.00) of which was payable within 60 days, the remainder of which was payable in sixty monthly installments of $304.15. No mention was made of the remaining marital property in the ordering paragraph. By implication, the court awarded Fred Larson the Bartlett Property and the Davis Place valued at $80,000.00 and $43,700.00, respectively, automobiles and a trailer worth $6,275.00, cattle at a value of $5,000.00, $14,725.00 worth of farm machinery, the balance of the Thorn contract attributable to the marital estate valued at $2,527.95,

-4-

and $9,892.00 in an unvested PERS retirement fund.  The
order expressly reposed in Fred Larson sole responsiblity
for the parties' accumulated debt, then totalling $99,333.54.
Included were First National Bank of Fairfield loans amount-
ing to $44,040.00, a Federal Land Bank loan equalling $28,900.00,
and the remainder due on the Davis Place contract, which was
$18,987.00.  Additionally, the court made no findings regarding
petitioner's request for maintainence.  It did find that
both parties were capable of being responsible for their own
attorney's fees.  Fred Larson was ordered to pay Beverly
Larson $200.00 per month per child for child support.  The
parties' stipulation regarding child custody and visitation
was incorporated by reference.

Petitioner then filed a timely motion for new trial or
amendment of the findings of fact and order.  Many of the
issues raised on appeal were addressed in this motion.  The
court's amendments were limited to the following particulars:
1) the fair market value of the cattle was changed from
$5,000.00 to $45,000.00; 2) the net value of the marital
estate was increased to $92,399.91; 3) Fred Larson was held
responsible for the minor childrens' reasonable medical,
dental and optical expenses; and 4) Beverly Larson's cash
award was increased to $31.000.00, of which $21,000.00 would
be payble in eighty-four monthly installments of $327.32.

NET WORTH AND DIVISION OF MARITAL ESTATE

Petitioner contends that the District Court abused its
discretion first by omitting certain marital assets proven
at trial, and second, in its determination of the value of
the assets included by the court.  The total of the omitted
and undervalued assets is $55,622.06, according to petitioner.
When that amount is added to the net estate found by the

-5-

court, petitioner argues, an award of only $33,870.00 in cash and personalty to petitioner is inequitable.

Petitioner maintains that respondent's checking account balance, certain shares of stock in the Federal Land Bank of Spokane, and a 1977 leased winter wheat crop in seed at the time of hearing, should have been valued and included in the marital estate. Respondent counters that it was reasonable for the District Court to omit those items because the checking account balance fluctuated greatly, depending on current working expenses or payment obligations, the shares had no marketable value because they were an integral part of the Federal Land Bank loan, and the crop lease may have existed at the time of hearing, but there was no evidence of its existence at time of distribution.

As a general rule, if contested evidence is presented to the trial court regarding the existence or valuation of a marital asset and no findings are made regarding that asset or no explanation is provided as to why the District Court accepted one party's valuations over that of the other, the District Court has abused its discretion. Peterson v. Peterson (1981), ____ Mont. ____, 636 P.2d 821, 38 St.Rep. 1723. Item-by-item findings are not required in property division cases, but findings nevertheless must be sufficently adequate to ensure that this Court need not succumb to speculation while assessing the conscientiousness or reason- ableness of the District Court's judgment. In re the Marriage of Caprice (1978), 178 Mont. 455, 585 P.2d 641.

Here the District Court makes no finding regarding either the bank stock or the leased crop. The finding which pertains to the checking account fails to disclose why the District Court chose to disregard the balance in its calculation of the net marital estate. This Court cannot uphold the

District Court's judgment as within the realm of its broad discretion if we have no inkling of its thought processes.

Petitioner's second contention is that the District Court erred in including less than ten percent of the balance remaining on the Thorn contract in the marital estate. Citing section 40-4-202, MCA, petitioner argues that there is no legal basis for limiting appreciation in land values over the course of the marriage by a fraction reflecting the ratio of prenuptial to post-nuptial payments made toward the original purchase price. Petitioner believes that such a valuation unduly minimizes her contribution as homemaker and ranch wife and disregards the statutory mandates of section 40-4-202, MCA. We agree.

The District Court reasoned that petitioner was only entitled to 4.7 percent of the value of the Thorn Place as a result of the parties' marriage because only $562.68 of the $2,000.00 balance remaining at the time of marriage was paid with jointly-acquired funds, the rest being paid with the proceeds from the sale of property Fred acquired before the marriage. Five hundred sixty-two dollars and sixty-eight cents represents approximately 9.4 percent of the original purchase price; therefore, only 9.4 percent of the balance remaining on the sale of the Thorn Place, one-half of which could be attributed to Beverly Larson's contributions during the marriage, should be included in the marital estate. The consequence of the court's reasoning was exclusion of $25,629.06 from the net value of the marital estate.

Respondent maintains that the District Court's reasoning is in keeping with the language of section 40-2-202, MCA, and the broad discretion afforded a District Court under section 40-4-202, MCA.

The Court is not impressed with respondent's defense of the District Court's order. Section 40-2-202, MCA, refers to a married person's property rights during a marriage. The days when section 40-2-202, MCA, and its predecessors limited the jurisdiction of the District Court in disposing of the individual property of a married person upon dissolution of the marriage have long since passed. Compare, Emery v. Emery (1948), 122 Mont. 201, 200 P.2d 251 with Schultz v. Schultz (1982), ____ Mont. ____, ____ P.2d ____, 39 St.Rep. 1435 (discussion of relationship of a companion statute, section 40-2-201, MCA, to the Uniform Marriage and Divorce Act, Title 40, Chapter 4, MCA).

Section 40-4-202, MCA, establishes the power of the District Court in a dissolution proceeding to "finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." (Emphasis added.) Section 40-4-202, MCA, also provides that the District Court consider "the contribution of a spouse as a homemaker to the family unit" and that if the nonmonetary contributions of the homemaker facilitated the maintainence of prior acquired property, that property may be considered as part of the marital assets for division.

Unlike In re Marriage of Jorgenson (1979), 180 Mont. 294, 590 P.2d 606, the District Court here expressly found that petitioner contributed "services of a domestic nature" during the marriage and implicity found that those services contributed to the maintenance of the ranch properties for at least thirteen years. The implication here drawn arises from the finding that since the parties' separation in January, 1978, Beverly Larson had not contributed in any

fashion to the maintenance of the ranch properties or operation. We caution the trial court not to place emphasis on petitioner's lack of connection with the ranch during the pendency of these proceedings. Cf. Torma v. Torma (1982), ____ Mont. ____, 645 P.2d 395, 39 St.Rep. 839 (discussion of parties' relative contributions toward property maintenance and equity after final decree has been entered). Though petitioner's homemaking services and nonmonetary contributions may not have been rendered in the ranch context, they nevertheless continued as petitioner had custody and primary responsibility for the physical and emotional needs of the parties' minor children. This no doubt facilitated respondent's ability to maintain his employment and ranch responsibilities as he was not required to take time from these activities to ensure that the childrens' basic needs were being met.

Along this same vein, we are disturbed by the District Court's finding that petitioner had a "desire to seek employment" but did not intend to do so "while she has a husband to support her." Not only does that finding fail to adequately address considerations which should be preeminent in the District Court's judgment in apportioning marital assets, such as petitioner's occupation, vocational skills, employability, and opportunity to acquire capital assets and income in the future, it punishes her for her rather traditional belief that the man should be the family breadwinner. The testimony is undisputed that petitioner has not been employed outside the home, in other than positions as a motel maid and domestic servant, since 1959. It is not surprising that a displaced homemaker with two minor children in her care, dependent on her husband's financial resources, limited public assistance and her meager earnings ($63.00, to be exact) as a freelance writer for the local weekly newspaper, would utter such a

statement in the context of a hotly contested, drawn-out dissolution proceeding. Given the statutory mandate of section 40-4-202, MCA, and the facts of this case, it was inappropriate for the trial court to attach any legal significance to this statement.

In reevaluating petitioner's nonmonetary contributions toward the marital estate and apportioning the marital assets, the District Court is directed to review this Court's opinions in Lewis v. Lewis (1982), ____ Mont. ____, 643 P.2d 604, 39 St.Rep. 759; Tefft v. Tefft (1981), ____ Mont. ____, 628 P.2d 1094, 38 St.Rep. 837; and Smith v. Smith (1981), ____ Mont. ____, 622 P.2d 153, 38 St.Rep. 146.

Petitioner's last contention involves the District Court's treatment of the Davis Place. She argues that respondent's purchase of the Davis Place in joint ownership with his son Martin shows an intent to defraud petitioner of any interest in the property. Under Humbird v. Arnet (1935), 99 Mont. 499, 444 P.2d 576, petitioner asserts she is entitled to protection as a creditor from fraudulent conveyances.

We find no merit in petitioner's argument. Not only do we have some difficulty in finding a purchase by a father and son to be a conveyance of the petitioner's interest in any property, we cannot ignore substantial credible evidence that father and son had long intended to arrange such a partnership and that son had worked for his father with the intention of achieving that objective. In limiting that portion of the Davis Place to be included in the marital estate to one-half, the District Court properly recognized the nonmonetary contributions of both the son and the spouse in maintaining the family ranch and the statutory limitations of its power to affect the property rights of only the

husband and wife.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices