No. 81-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

IN RE THE MARRIAGE OF

LYNN WOLFE,

Petitioner and Appellant,

and

SAMUEL WOLFE,

Respondent and Respondent.

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               The Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellant:

        Milodragovich, Dale & Dye, Missoula, Montana

    For Respondent:

        Tipp, Hoven, Skjelset & Frizzell, Missoula, Montana

    For Amicus Brief:

        Hilley & Loring, Great Falls, Montana

Submitted on briefs: December 9, 1982

Decided: February 17, 1983

Filed: **FEB 17 1983**

Ethel M. Harrison

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Petitioner, Lynn Wolfe appeals the December 16, 1980 decree of the Fourth Judicial District Court distributing the marital estate of the parties. We vacate the decree and remand this cause for resolution pursuant to the guidelines set forth below.

Lynn and Samuel Wolfe were married on October 17, 1949. They resided on the Colorado ranch belonging to respondent and his family until 1952, when appellant moved to Missoula, Montana. Respondent followed shortly thereafter. The family resided on a ranch and then bought a house in Missoula, prior to purchasing a 5200 acre ranch outside Stevensville, Montana in 1961. Appellant lived and worked on that ranch until 1964, when she returned to the house in Missoula. The parties have been separated since that time. Appellant has lived in California since 1971. Respondent began leasing the ranch in 1971 and moved to Missoula in 1977, where he still resides.

Appellant's two children from a previous marriage were adopted by respondent. The couple also have two children of their own, James and Carolyn. All are over twenty-one, however, Carolyn is mentally retarded. She resides with her mother as she is incapable of staying alone for more than three hours at a time. Appellant also had custody of James for approximately four years prior to his emancipation.

The marriage of the parties was dissolved on August 17, 1979. At that time, appellant was sixty-four years of age and had voluntarily retired from her position as an eligibility worker for the State of California. Respondent was a fifty-nine year old property manager and carpenter.

Most of his monthly income was derived from rentals on the property he owned and managed.

Following a hearing on January 8, 1980, findings of fact, conclusions of law and a decree distributing the marital estate were issued December 16, 1980. Appellant was awarded all property held in her name and in her possession, subject to all debts thereon. Except, the $16,500 mortgage on appellant's house in California became the obligation of respondent until its retirement, appellant's move or the sale of the house, whichever occurs first. Respondent apparently received everything else, although the Stevensville ranch was not specifically awarded to anyone. No maintenance or child support was awarded. No provision for the care of Carolyn was made.

Lynn Wolfe's appeal of that decree presents us with the following issues:

1. Did the District Court err in adopting respondent's proposed findings and conclusions under the circumstances of this case? Specifically, did the court err in failing to award maintenance; in adopting respondent's opinion of the value of the Stevensville Ranch; and in failing to make findings concerning the parties' needs, income and ability to acquire assets in the future?

2. Did the District Court err in concluding that it did not have jurisdiction to consider the needs of the parties' adult mentally retarded daughter in distributing the property?

3. Was the division of property inequitable? Specifically, did the District Court err in its treatment of the Stevensville ranch as inheritance, premarital and gift property of the husband; in awarding all appreciation attributable to inflation and increase in land values to the

3

husband; and in failing to consider care of an adult mentally retarded daughter as contribution to the family unit?

The Uniform Marriage and Divorce Act was in force at the time that the decree was issued by the District Court. However, the decree was issued prior to this Court's recent decisions interpreting and applying the Act in Montana. We will therefore set forth summaries of some decisions as they pertain to the issues now before us. These guidelines shall govern upon remand of this case.

ISSUE ONE:     Did the District Court err in adopting respondent's proposed findings and conclusions under the circumstances of this case?

In Tomaskie v. Tomaskie (1981), ____Mont____, ____, 625 P.2d 536, 539, 38 St.Rep. 416, 419, we voiced our disapproval of trial courts relying "too heavily on the proposed findings and conclusions submitted by the winning party." A trial judge relies "too heavily" upon proposed findings when they are used "to the exclusion of a consideration of the facts and the exercise of his own judgment." Hunter v. Hunter (1982), ____Mont.____, ____, 639 P.2d 489, 495, 39 St.Rep. 59, 67. "Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." Jensen v. Jensen (1981), ____ Mont.____, ____, 631 P.2d 700, 703, 38 St.Rep. 1109, 1113. The findings here, which were adopted practically verbatim from the respondent's proposed findings, do not meet these tests.

Conclusion of Law #7 states:

"Lynn Wolfe is not entitled to any maintenance in light of the property she received from the distribution of the marriage. In light of her continuing ability to earn income, and her ability

4

to support herself through appropriate employment, this court awards no maintenance."

In determining the maintenance issue on remand, consideration shall be given to appellant's need for maintenance in light of the property division, Lynn's age and health and Carolyn's condition.

" . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." Section 40-4-203(1), MCA.

See Tidball v. Tidball (1981), ____Mont.____, 625 P.2d 1147, 38 St.Rep. 482, where we held it to be inappropriate to require the custodian of a physically and emotionally handicapped child to work outside the home in lieu of maintenance.

In determining the distribution of the marital estate, the District Court shall consider and apply the factors set forth in section 40-4-202, MCA. That includes each party's income, needs and ability to acquire assets in the future. On remand, the trial judge shall give consideration to those factors. Smith v. Smith (1981), ____Mont.____, 622 P.2d 1022, 38 St.Rep. 146; Tefft v. Tefft (1981), ____Mont.____, 628 P.2d 1094, 38 St.Rep. 837.

Finally, a professional appraiser hired by Sam Wolfe valued the Stevensville ranch at $1,184,725.50, as a working ranch. Lynn Wolfe's professional appraiser valued the ranch at $1,649,166.00 at its highest and best use. Respondent's opinion regarding the value of the ranch was that it is worth $450,000.00. Citing no reasons, the District Court adopted

5

respondents' opinion. Where there are "widely conflicting valuations" between different appraisers, the District Court shall give reasons why one value is selected over the others. Peterson v. Peterson (1981), ____Mont. ____, 636 P.2d 821, 38 St.Rep. 1723.

ISSUE TWO: Did the District Court err in concluding that it did not have jurisdiction to consider the needs of the parties' adult mentally retarded daughter in distributing the property?

Section 40-4-202(2), MCA, states:

"(2) In a proceeding, the court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent children of the parties."

Therefore, Lynn's request to have a trust established for the benefit of Carolyn should have been entertained by the District Court. Further, the District Court has jurisdiction to provide for the support of Carolyn, even if a trust is not established. Maberry v. Maberry (1979), ____ Mont.____, 598 P.2d 1115, 36 St.Rep. 1511. The needs of Carolyn shall be considered on remand.

ISSUE THREE: Was the Division of Property inequitable?

The District Court's division of the marital property was inequitable. On remand, the court shall generally consider the guidelines set forth in section 40-4-202, MCA, and the numerous cases construing that statute, particularily Larson v. Larson (1982), ____ Mont. ____, 649 P.2d 1351, 39 St.Rep. 1628. In applying those guidelines, the District Court shall value the marital property as of the date of dissolution, August 17, 1979. Krum v. Krum (1980), ____Mont.____, 614 P.2d 525, 37 St.Rep. 1291.

6

The December 16, 1980 decree is vacated and remanded for reconsideration in light of this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

7