No. 84-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN RE THE MARRIAGE OF
JACK R. ZIEGLER,

               Petitioner and Appellant,

   and

SUZANNE ZIEGLER,

               Respondent and Respondent.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
            In and for the County of Gallatin,
            The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Larry W. Moran, Bozeman, Montana

    For Respondent:

        Bryan & Atkins; John P. Atkins, Bozeman, Montana

_____

Submitted on Briefs:  Jan. 10, 1985

Decided:  March 11, 1985

Filed: MAR 1985

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the opinion of the Court.

Jack R. Ziegler filed a petition for dissolution of marriage in March 1983. Judge Thomas Olson entered an order dated May 24, 1983, dissolving the marriage, granting temporary custody of the four minor children to Suzanne Ziegler, establishing temporary support and maintenance, and ordering temporary distribution of certain items of personal property. Hearings on the issue of final child custody and distribution of the marital estate were conducted in April and December of 1983. The trial court entered findings of fact and conclusions of law on June 15, 1984, and issued its final order on June 22, 1984, granting permanent custody to Suzanne Ziegler, and dividing the marital assets. Jack Ziegler appeals child custody and distribution of the marital estate.

Jack and Suzanne Ziegler married on May 6, 1967. At the time of the dissolution of their marriage, they had been married over fifteen years and were the natural parents of four minor daughters: Tami (age 12); Kristi (age 10); Cindi (age 5); and Sheri (age 2).

Early in their marriage, Jack and Suzanne started a retail lumber business in Bozeman, Montana. Both invested start-up capital in the business. The Zieglers' efforts liquidated all the initial debts of the proprietorship and made Zig's Building Materials a successful, self-sustaining enterprise.

Since the inception of Zig's Building Materials, Jack devoted his energies and managerial talents to promoting the family lumber company. He routinely worked ten hours per day, six days a week. During the course of their marriage, Suzanne never worked outside the family home. She managed

the family needs, and cared for their daughters which allowed Jack to devote his full time to the family business.

After domestic difficulties became irreconcilable, Jack petitioned for dissolution of marriage in March 1983. The trial court's temporary order dated May 24, 1983, dissolved the marriage, granted temporary custody of all four daughters to Suzanne, gave Suzanne possession of the family residence and one of the family vehicles and ordered Jack to remit $800 per month in child support and $1,750 per month in maintenance. Payments commenced June 1, 1983, and are to continue until this case is resolved on appeal.

The case came before the trial court for hearings on final resolution of child custody and distribution of the marital estate in April and December of 1983. Conflicting testimony was introduced to the trial court on both issues. The case was taken under advisement pending the trial court's decision.

Granting the petitioner's motion, the trial judge ordered the Department of Social and Rehabilitation Services to conduct an investigation of the households of Jack and Suzanne Ziegler and to provide the trial court with a report concerning the custodial arrangement for the parties' minor children. The report dated May 2, 1984, concluded, "Jack and Suzy both appear to care for the children and either one could physically care for the children but it seems (after wading through all the allegations) that Jack could possibly better meet the children's emotional needs in the long run." This report was filed with the trial court on July 3, 1984. No hearing was conducted on the custodial investigation; no copy of the report was sent to appellant.

The trial judge entered final findings of fact and conclusions of law on June 15, 1984, and issued a final order

3

on June 24, 1984. Without discussing the investigator's recommendation, the trial court granted permanent custody to Suzanne.

On appeal Jack Ziegler presents the following issues:

1. Did the trial court comply with proper legal standards in determining the child custody issue?

2. Did the trial court value marital property consistent with the evidence?

3. Was the trial court's division of the marital property an abuse of discretion and/or a violation of the public policy of the State of Montana?

Appellant contends that the trial judge made its final decision absent any indication that it considered the custody report during its deliberation. We agree.

The relevant portions of § 40-4-215, MCA, provide:

"(1) In contested custody proceedings and in other custody proceedings if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child . . .

". . .

"(3) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing . . ." (emphasis added)

The mandatory language of this statute requires district courts to provide copies of a custody investigation report to the parties involved. No discretionary power of the trial court is evoked. Once the trial judge considered it appropriate to order an investigation of the custodial arrangement, the controlling statute mandates that copies of the report be distributed by the trial court to counsel and parties.

Not only did the trial court fail to send copies of the report, but no hearing was held to permit testimony on the

4

issue. The final order dated June 24, 1984, was entered approximately nine days before the investigative report was filed with the court. If the trial court found it appropriate to order the custody investigation, it abused its discretion by not considering the report in the process of reaching its final custody decision.

Appellant's second and third issues address the matter of distribution of marital assets and are discussed in tandem.

Fundamental to this Court's appellate review is the broad discretion vested in trial courts for purposes of distributing marital property upon dissolution of marriage. We may only disturb the decision of a trial court when abuse of discretion is clear. In Re the Marriage of Gies (Mont. 1984), 681 P.2d 1092.

Appellant correctly points out a simple mathematical error committed by the trial court. When assigning a numerical figure to the net value of Zig's Building Materials in its findings of fact, the trial court transferred the sum of $596,939.76 which represented the personal net assets of the Zieglers instead of $594,721.18, the net value of Zig's Building Materials. The $594,721.18 figure was introduced into evidence on the December 31, 1982, balance sheet of the business as "Proprietor's Equity." Although minuscule relative to the total valuation of the marital estate, the excess evaluation of $2,218.58 must be corrected by the trial court.

We are not convinced by appellant's argument that the trial court augmented the value of marital assets by double accounting for certain items. Appellant accuses the trial judge of "fictitiously inflating" the value of Zig's Building Center when it "split out and added back separately" the following items: $322,902 for cash on hand, $85,000 for

5

value of stock, $4,000 for a vehicle and $1,000 for a lawn mower. Appellant contends that the addition of these erroneous duplications to the already incorrect valuation of $596,939.76 resulted in an erroneous value of $1,009,841.76 assigned by the trial court for Zig's Building Materials. Maintaining $594,721.18 as the proper value for the business, appellant claims the trial judge overestimated this asset by $415,120.56.

The undisputed testimony of appellant's own accountant, Mr. Ed Orazem, refutes this contention. On cross-examination, Mr. Orazem testified on the fair market value of Zig's Building Materials as follows:

"Q. I'd like to establish a - - dealing with your direct - - your testimony that you offered on direct examination that you feel that the fair market value of Zig's Building Materials is $550,000?

"A. Excluding cash on the balance - -

"Q. Excluding cash?

"A. That is correct.

"Q. The cash on the balance sheet at the time Mr. Carlisle did his calculations is $319,000?

"A. That is correct.

"Q. And, does the figure of 550 that you had also include the value for the stock that Mr. Ziegler owns in Zig's Building?

"A. No, it does not.

"Q. What is your bottom figure value - - figure for that stock?

"A. I'd say $100,000.

"Q What is the book value of that stock, I mean you are aware of that, right?

"A. The book value would be, of that stock, would be 100,000 less $35,000 loss, would be the equity that would show, it would be about 70 - $75,000.

"Q. So, your valuation of Zig's Building Materials and Zig's Building Center would be that figure, $969,000, is that correct?

6

"A. That's correct."

In light of the disparity of the values submitted by both parties for individual assets of the marital estate, the noticeable discrepancy between those values recorded in testimony and the values assigned by the trial judge in the final distribution is not surprising and of no consequence to the contested issue. Testimony by appellant's accountant supports the trial court's method of adding $322,000 for cash on hand and $85,000 for stock in the business (plus other less significant amounts) to the figure of $594,721.18, when calculating the valuation of the Zig's Building Material enterprise.

Appellant's next contention alleges that the trial court's "most significant shortcoming lies in its failure to make required 'findings' in support of its distribution of marital assets." Citing, Johnsrud v. Johnsrud (1978), 175 Mont. 117, 572 P.2d 902, as authority, appellant contends that the trial court is required to make specific findings in support of its reasoning and in reference to that evidence which it considered in reaching its final decision. We agree with respondent that the more current standard of review for division of marital assets is enunciated in Larson v. Larson (Mont. 1982), 649 P.2d 1351, 1354. In Larson this Court held:

> "Item-by-item findings are not required in property
> division cases, but findings nevertheless must be
> sufficiently adequate to ensure that this Court
> need not succumb to speculation while assessing the
> conscientiousness or reasonableness of the District
> Court's judgment."

We do not wish to restrict the liberal, discretionary power vested in the district courts, by requiring rigid adherence to technical forms of property distribution orders. This Court recognizes that the trial court must evidence the

7

basis of its ultimate conclusion in the findings of fact. However, the statutory guidelines promulgated in 40-4-202, MCA, were not designed as requisite criteria to be individually itemized in every property distribution decree.

From the confusing crossfire of conflicting evidence on the valuation of marital assets, the trial court issued twenty-five findings of fact in an effort to substantiate the basis upon which his subsequent conclusions of law were entered. In Conclusion No. 7, the trial judge explained the reasoning for using one method of valuing the family business over the other and wrote:

> "7. Respondent's valuation of the business using the investment model - what investment sum would earn interest equal to the earning of Zig's if invested in a bank - is not a relevant indicator of the value because it ignores the risks inherent in a lumberyard and the skill of the manager. Petitioner's valuation - what a prudent purchaser would pay for the business taking into account financing the purchase from earnings - is a reasonable, relevant and reliable means of valuing the business."

Relative to the work contribution of both parties to the business and family, in Finding of Fact No. 10, the trial judge found:

> "Since the inception of the business in Bozeman, it was the petitioner who devoted all of his energies and talents to the business. Respondent, for her part, managed the family home and cared for the children."

We find no abuse of discretion. The trial court's findings of fact and conclusions of law are sufficiently responsive to the statutory guidelines enacted in 40-4-202, MCA.

Appellant's final contention embraces a public policy argument against the method of payment specified in the trial court's order.

Concluding that the marital assets were to be divided equally between the parties, the trial court calculated a net

value of marital assets, subtracted the amount for personal property and other marital assets awarded the respondent, and ordered the petitioner to pay the respondent's residual equity in the marital estate in the following manner:

"10. That the petitioner shall execute a promissory note secured by the business, in the amount of one half of the difference of $1,067,416.75 and $145,075.00, which equals the sum of $922,341.75, one half amounting to the sum of $461,170.87, the balance amortized over ten (10) years, bearing interest at two percent (2%) below prime as used by the local banks."

Appellant complains that such a method of payment violates public policy because of its "indefiniteness and ambiguity, (regarding when payments are due, . . . and right to prepay, etc., whether local banks even have a 'prime' interest rate). . . ." Such an order, the appellant claims makes him an "indentured servant" whose "life is placed on 'hold' while he is forced to become an income source for his ex-wife, . . ." He argues that the lack of specificity regarding the interest rate places appellant on "an unpredictable roller coaster of payments" preventing him to "plan for any month."

In essence, appellant does not contest the fifty-fifty division as an inequitable distribution of the marital estate, but disputes the method of payment. The trial court's order does not prevent appellant from refinancing his obligation to acquire more satisfactory terms. We find no abuse of discretion in the trial court's prescribed method for appellant to satisfy his financial responsibility to respondent.

This Court remands the case on the limited issue of custody of the four minor daughters with the instruction to the District Court to address the recommendations submitted to the lower court in the custody investigation report. The order distributing the marital estate is affirmed, subject to

9

the trial court correcting the net asset figure previously discussed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, specially concurring.

The trial judge, in his order of June 14, 1984, in finding of fact no. 3, found that "the parties in their proposed findings both agree that respondent should be the custodial parent." However, after the proposed findings had been filed, the petitioner requested on January 23, 1984, and the trial court ordered on February 16, 1984, a home study investigation. Counsel for appellant alleges that he did not receive a copy of the home study report, dated May 2, 1984, as required by section 40-4-215(3), MCA. Because the record does not disclose whether the trial judge considered the report, I concur in the remand on the custody issue. In my view this issue has arisen because the petitioner's request for an investigative report was made long after the custody hearing was held, while the statute involved anticipates a report prior to the custody hearing.

The home study report contained only general observations, without recommendations as to custody, and, in my view, would not override the trial court's findings of fact no. 3. I would, therefore, only require a statement by the trial judge that the home study report had in fact been considered by him in deciding the custody issue.

_____
Justice