No. 84-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE MARRIAGE OF

ELOISE ELAINE GLASS,

Petitioner and Respondent,

and

NEIL ARLEN GLASS,

Respondent and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark Stermitz; Law Office of John R. Christensen,
Stanford, Montana

For Respondent:

Kenneth C. Tolliver; Wright, Tolliver & Guthals,
Billings, Montana

For Intervenor:

Carey E. Matovich, Billings, Montana (Glass & Sons)

Submitted on Briefs: Dec. 20, 1984

Decided: March 21, 1985

MAR 2  1985

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison delivered the opinion of the Court.

Eloise Glass filed a petition for dissolution of marriage on May 19, 1982. A decree dissolving the marriage was entered April 25, 1983, with disposition of the marital property reserved for a later date. Following a two-day trial, the District Court of the Tenth Judicial District, County of Fergus, entered findings of fact, conclusions of law and a judgment on February 14, 1984.

On April 4, 1984, Charles Glass & Sons, a partnership in which Neil holds a 50 percent interest, moved to intervene in the proceedings. The partnership filed motions to amend the findings, to alter or amend judgment, or for a new trial. Neil Glass made similar post-trial motions.

On April 17, 1984, the District Court denied all post-trial motions. Neil and Eloise both appeal from the February 14, 1984, judgment distributing the marital property. Neil also appeals the April 17, 1984, motion denying his post-trial motions. Charles Glass & Sons appeals the decision of the District Court denying its motion to intervene on the basis that the motion was not timely filed. We affirm all judgments and orders issued by the District Court in this cause.

Neil and Eloise Glass were married on November 28, 1964. They have two children, a son born in 1965 and a daughter born in 1969. Both were raised in the Denton area by families engaged in ranching. At the time of the marriage, the partnership owned some farm land, a truck, a trailer and some cows. Eloise brought bonds and cash totalling $11,000 into the marriage. Each family has since contributed to the marriage in various aspects.

Eloise suffers from cerebral palsy. Therefore, she does not have significant prospects for gainful employment in the future. She worked on the ranch and reared two children during the course of the marriage.

The partnership acquired a large land holding in 1968, the Ward Ranch. The partnership has since continuously grown and expanded, while remaining consistently in debt. Two days of testimony concerning the value of the partnership, the value of Neil's interest in the partnership, the contributions of both parties to the marriage, the contributions of both parties' families to the marriage, the needs of the children and the needs of Eloise, resulted in a property distribution decree awarding Neil 60 percent of the net marital estate and Eloise 40 percent. Neil now contends that in order to meet the scheduled payments to Eloise, the partnership will have to be sold.

Further facts will be developed as required for resolution of the specific issues raised. Those issues are:

Intervention

1. Whether the District Court abused its discretion in denying the motions of the partnership, Charles Glass & Sons.

Appeal

1. Whether the District Court abused its discretion in distributing the marital property?

2. Whether the District Court abused its discretion in valuing the marital estate?

Cross-Appeal

1. Whether the District Court improperly applied the policy in favor of preserving Montana's family farms in determining the allocation of the marital estate rather than only in the method of distribution.

2. Whether the District Court erred in not considering the wife's severely limited future earnings capacity in allocating the marital estate.

INTERVENTION BY THE PARTNERSHIP

Charles Glass & Sons moved to intervene following trial and decision by the District Court, pursuant to Rule 24, M.R.Civ.P. The partnership's primary contention was that the trial judge had overvalued the partnership. It sought to present "new" evidence concerning the value of the partnership's land holdings and cow/calf pairings. Further, it contended that the trial judge had improperly treated gifts given to Neil and Eloise by their families. These same arguments were presented to the trial judge in Neil Glass's post-trial motions.

Rule 24, M.R.Civ.P., requires that an application to intervene be timely. The trial judge dismissed the partnership's motion, stating that a motion to intervene filed after a judgment is not timely. We cannot agree. Although not often granted, motions to intervene made after judgment are not per se untimely. 3B Moore's Federal Practice ¶ 24.13, at 24-154 - 24-157. (2d. ed. 1984)

A determining factor in granting a post-judgment motion to intervene is whether the motion seeks to reopen or relitigate an issue already determined. McDonald v. E.J. Lavino Co. (5th. Cir. 1970), 430 F.2d 1065, 1072. Here, the entire purpose of the motion is to reopen litigation in order to permit the partnership to present "new" evidence on the value of the partnership. Further, Rule 24, M.R.Civ.P. is a discretionary, judicial efficiency rule. It is used to avoid delay, circuity and multiplicity of actions. Grenfell v. Duffy (1982), 198 Mont. 90, 95, 643 P.2d 1184, 1187. If the

- 4 -

partnership were allowed to intervene, it would seek only to relitigate issues about which the parties have had every opportunity to present evidence at trial. Therefore, we affirm the denial by the trial court of the partnership's motion to intervene.

DISTRIBUTION OF THE MARITAL ESTATE

The net value of the marital estate was found to be $711,961, with $678,633 of that amount being Neil's interest in the partnership. Neil was awarded 60 percent of the marital estate, or $427,176. Eloise was awarded 40 percent, or $284,785. The trial judge allowed Neil ten years at 7 percent interest, with an initial payment of $38,650 and ten annual payments of $35,595, to pay Eloise for her interest in the marital estate.

Neil contends that the trial judge abused his discretion by failing to give sufficient consideration to Montana's public policy favoring the preservation of the family ranch when he distributed the marital property. Specifically, Neil contends that the ranch partnership will have to be liquidated in order to pay to Eloise her share of the marital estate. However, Neil offers no proof in support of this contention. Instead, he compares his situation with several other Montana dissolution cases involving family ranches and concludes that he has received unfair treatment. The valuation and distribution of a marital estate in any one case must be based solely on the facts and circumstances unique to that case. In re the Marriage of Aanenson (1979), 183 Mont. 229, 234, 598 P.2d 1120, 1123.

The trial judge recognized Montana's public policy favoring the preservation of family ranches in finding of fact #26 and conclusion of law I. His distribution scheme,

which recognizes this public policy, is well reasoned and supported by specific findings. The 7 percent interest rate allows Neil the use and benefit of the partnership property from which the settlement is to be paid and allows Eloise to receive interest at least equivalent to that earned by ordinary savings accounts. Finding of fact #30. Ten years is a reasonable time for Neil to complete his purchase of Eloise's interest through the use of the farm assets, which form a part of the marital estate. Finding of fact #26. The distribution of the marital estate by the trial judge is affirmed.

## VALUATION OF THE MARITAL ESTATE

Neil Glass contends both in his post-trial motions for relief and on appeal that the trial judge abused his discretion in valuating the marital estate. The only basis for granting a new trial in this situation is the discovery of new evidence which the party could not, with reasonable diligence, have discovered in time for trial. See, §§ 25-11-102 and 103, MCA. Neil presented no "new" evidence in support of his post-trial motions, only belated evidence. Although perfectly capable of doing so, Neil refused to obtain appraisals, records and other information until learning of the trial judge's valuation of the estate. We affirm the denial by the trial judge of Neil's post-trial motions.

On appeal, Neil raises the following errors in the trial court's valuation of the marital estate:

1. The court relied too heavily on Eloise's expert appraiser, whose findings contain many errors;

2. The value of Glass cattle was extremely inflated and not based on proven fact;

3.  The full value of Federal Land Bank stock should not have been included as a partnership asset;

4.  It was error to find that Neil Glass's partnership capital account was $16,605 in excess of the other partners;

5.  The court mishandled evidence of gifts from both parties' parents;

6.  The value of Eloise's non-monetary contribution to maintenance of the marital estate was unrealistically inflated.

Neil has failed to show that the valuations by the trial judge are clearly erroneous.  We therefore affirm those valuations.  In re the Marriage of Gomke (Mont. 1981), 627 P.2d 395, 396, 38 St.Rep. 578L, 578N.  In affirming, we address each issue in the order presented by appellant.

1.  Eloise Glass presented testimony at trial by an expert appraiser, Robert L. Kellogg, on the value of the ranch lands owned by the partnership.  Kellogg estimated the value of the ranch land at $1,310,000, or over $207 an acre.  Neil and his brother/partner, Kenneth, estimated the average value of the land at $100 an acre.  The Glasses' banker, D.A. McRae, stated that good farm land in the area was worth $550 an acre.  McRae valued land owned by the partnership from $65 to $550 an acre.  The trial judge adopted Kellogg's value, stating:

> "Petitioner wife obtained an extensive, well-documented written appraisal of the partner-ship lands by Robert L. Kellogg, of Norman C. Wheeler & Associates, Bozeman, Montana, which was a complete, realistic and impartial evaluation there-of; that said appraisal determines value by the income, cost and market approach, utilizes compara-ble sales, and accurately expresses fair market value of the property at $1,310,000.00 . . . ."
> Finding of fact #16d.

The trial judge is free to select and reject appraisal values as he wishes, so long as there is substantial credible evidence in support of the values he selects. In re the Marriage of Peterson (1981), 195 Mont. 157, 162, 636 P.2d 821, 823. However, where the values presented at trial are widely conflicting, the trial judge must state the reasons for his selection. In re the Marriage of Wolfe (Mont. 1983), 659 P.2d 259, 262, 40 St.Rep. 211, 214. Where, as here, the trial judge states his reasons for selecting one appraisal over the others, there is no abuse of discretion.

2. The same argument applies to the trial court's valuation of the partnership's cattle. At trial, Kenneth Glass estimated the value of their cow/calf pairs at $400 to $500. On the firm's financial statement, he valued them at $550. The court granted both parties leave to supplement the record on this issue after trial. Eloise presented the court with a valuation by Doug Best, an employee of Billings Auction Yards, of $650 per head for the cows. Neil presented no evidence to refute this valuation, nor did he present any other valuation of his own. Further, regarding the Glass brothers' valuation of their property, the trial judge stated:

> "Respondent and his brother, Kenneth Glass, were recalcitrant and evasive witnesses in numerous respects, especially as to values of land, livestock and grain sales, and even failed to produce various current partnership records and statements attempted to be subpoenaed by petitioner and 1982 income tax data. Such omissions and derelictions by the brothers have substantially impaired their credibility on all material issues herein, and rendered their personal opinions as to land and livestock values of little worth." Finding of fact #16b.

Therefore, the trial judge did not abuse his discretion when he adopted the value placed on the partnership's cows by Doug Best.

3. As a prerequisite to borrowing money from the Federal Land Bank, the partnership was required to purchase Federal Land Bank stock in the amount of 5 percent of the loan, or $13,200. The trial judge included the value of this stock in the marital estate. In his post-trial motions, and again in this appeal, Neil requests the value of the stock be discounted to reflect the fact that it will be tied up for the life of the loan. Unfortunately, although Neil certainly had the opportunity to do so, he failed to present any evidence at trial on how the stock should be discounted. We find no error in the trial court's denial of the post-trial motion as Neil's request is not based on new evidence, or any other ground set forth in § 25-11-102, MCA. Further, we will not entertain issues raised for the first time on appeal.

4. Based on the testimony of the partnership's accountant, that Neil had drawn less money from the partnership account than had his brother, the trial judge found that Neil's partnership account contained $16,605 more than did Kenneth's partnership account. In so finding, the trial judge disregarded testimony by Kenneth Glass that the discrepancy existed because Kenneth had contributed over $10,000 to the partnership from a personal injury settlement. We find no error in this decision. Kenneth's statement is contrary to both the December 31, 1981, statement of assets and liabilities of the partnership and Charles Glass's testimony that neither of his sons paid to get into the business. Once again, the trial judge is free to believe the testimony of whichever witness he finds most credible.

- 9 -

5. We find no merit whatsoever to Neil's contention that the court mishandled evidence of gifts to the parties by their parents. Neil alleges that the trial judge failed to consider the fact that were it not for Charles Glass, the Glass partnership would not have attained its present financial status. Specifically, Neil contends the trial judge erred in failing to consider the effect the nominal leasing of the Ward Place by Charles to Neil and Kenneth had on appreciating the value of the marital estate. The fact is, Charles did not lease the Ward Place to his sons. The partnership purchased the Ward Place in 1968. Other beneficial gifts from Charles to the partnership were offset by the donation of the use of a house by Eloise's parents to Neil and Eloise.

6. Finally, Neil contends that the trial judge unrealistically inflated the value of Eloises' non-monetary contribution to the marital estate. Again, we do not agree. Eloise worked on the ranch for several years. Even after she moved to town, she still contributed to the marital relationship as homemaker, wife and mother. As we stated in In re the Marriage of Larson (Mont. 1982), 649 P.2d 1351, 1355, 39 St.Rep. 1628, 1633:

> "Though petitioner's homemaking services and non-monetary contributions may not have been rendered in the ranch context, they nevertheless continued as petitioner had custody and primary responsibility for the physical and emotional needs of the parties' minor children. This no doubt facilitated respondent's ability to maintain his employment and ranch responsibilities as he was not required to take time from these activities to ensure that the childrens' [sic] basic needs were being met."

We affirm the valuation of the marital estate by the trial judge.

## ALLOCATION OF THE MARITAL ESTATE

Eloise, on cross-appeal, contests the allocation of the marital estate by the trial judge. Basically, Eloise contends that the trial judge erred in his application of Montana's public policy in favor of preserving the family ranch and in failing to consider the effect of her handicap on her ability to acquire future earnings when allocating the marital estate.

Eloise's initial contention is based on finding of fact #26, where the trial judge states in part:

> "26. The court finds that Montana is still primarily an agricultural region, and because the family held ranch is a form of business worth encouraging, that it is a desirable and declared policy in this state to preserve the integrity and continuation of the family farm and ranch operation, if reasonably possible. Therefore, to give the respondent husband herein a chance to keep the family ranch and to purchase the wife's interest in the marital estate over a period of time, and because he contributed several years of effort and labor to the ranch operation before the parties married and one year after the parties separated, because the wife's possibility of inheritance from her parents appears commensurate with the husband's potential inheritance from his parents, and because the husband will also be obligated for child support for another three or four years, the marital estate should not be divided equally, but that the husband should receive 60% thereof and the wife 40%." (emphasis supplied).

Eloise correctly contends that the trial judge erred in considering Montana's policy in favor of preserving family ranches when allocating the marital estate between the parties. This policy is not included as a criteria to be considered when dividing martial property under § 40-4-202(1), MCA, Montana's equitable property distribution statute. Rather, the policy is only to be considered upon distribution of the marital property, after it has been allocated.

However, in light of the other statutory reasons given for the 60-40 split, we find this error to be harmless.

"[T]he policy of keeping a family ranch intact cannot be used to deprive a spouse of his or her equitable share of the marital estate." In re the Marriage of Garst (Mont. 1983), 669 P.2d 1063, 1067, 40 St.Rep. 1526, 1531. Eloise has not been deprived of her equitable share of the marital estate. Keeping in mind Eloise's handicap, employment situation, contribution to the family ranch, potential inheritance and needs, the trial judge awarded her 40 percent of the marital estate.

Further, conclusions of law J and M insure that, pursuant to In re the Marriage of Jacobson (1979), 183 Mont. 516, 525, 600 P.2d 1183, 1188, the policy against splitting up the ranch or forcing its sale will yield to Eloise's right to an equitable share of the property. Conclusion of law J provides that Eloise's interest in the ranch shall be secured by a judgment lien. Conclusion of law M states:

> "That in the event the husband fails, neglects or refuses to make the payments herein provided for to the wife, the Charles Glass & Sons partnership should be legally wound up and liquidated, the assets sold, and any balance due the wife paid to her."

There is absolutely no merit to Eloise's second contention that the trial judge failed to consider her handicap. The trial judge states in finding of fact #10:

> "That the wife is now about 39 years old, has suffered from cerebral palsy since birth, and is impaired by an asthmatic condition and a degenerated cervical disk, all of which severely limits and restricts her employability and the type of work she can do. The cerebral palsy affects her fine motor skills and precludes effectively performing tasks such as writing and typing. Prior to the marriage, however, Eloise finished about two years of college at MSU in Bozeman, Montana, afterwards she performed volunteer work with church and youth groups and did a little babysitting, and in the last few years she has sought vocational rehabilitation, but she has no work experience outside the ranch and home, and no skills or educational certification that would assist her in finding

- 12 -

> employment, especially in the small town and rural area of Denton. Due to petitioner's physical condition and lack of vocational experience, she would require substantial training or education in order to function in the job market, and even then her ability to hold steady employment and become self-supporting is highly questionable."

This finding is supported by the testimony of Eloise's vocational rehabilitation counselor, Bob Morgan.

Eloise's physical condition and its effect on her ability to earn a living is again considered by the trial judge in conclusion of law H:

> "H. That by reason of the length of the marriage, the wife's contributions to the husband's farming and trucking business and their accumulation of property, her contributions as a homemaker and mother to the parties [sic] two children, and her severe physical disabilities and limitations for employment, the wife is entitled not only to maintenance for herself until her receipt of the first lump sum toward property settlement as herein specified, but also to a substantial portion of the husband's partnership interest in Charles Glass & Sons as herein set forth." (emphasis supplied)

We find no basis for Eloise's complaint concerning this matter.

The allocation of the marital estate between the parties is affirmed.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
John C. Sheehy

_____
Justices

- 13 -