Justice Beth Baker delivered the Opinion of the Court.
***540 ¶ 1 Wendy Rogers appeals the findings of fact, conclusions of law, and ***541 final parenting plan ordered by the Third Judicial District Court, Anaconda-Deer Lodge County. She alleges multiple errors in the District Court's factual findings and in its parenting plan determination. We do not adopt the District Court's findings in full, but upon review of the record conclude that substantial evidence supports its decision and that Wendy has not demonstrated reversible error. We affirm the parenting plan.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 Wendy Rogers and David Otto Kesler, III, married in March 2012 and had one child, K.R.K., in December 2012. The couple briefly resided in Roundup, Montana, at the beginning of the marriage, but moved to the Deer Lodge area shortly after Wendy became pregnant. David's family owns a large ranch near Philipsburg and has extended family in the area. David and Wendy moved into a house owned by David's parents.
¶ 3 David and Wendy's relationship quickly deteriorated. Wendy filed for a temporary order of protection in Powell County in February 2013, alleging physical and verbal abuse from David. David petitioned for a dissolution of marriage in Anaconda-Deer Lodge County shortly thereafter. In April 2013, the District Court dissolved the temporary order of protection and ordered an interim parenting plan granting Wendy primary residential custody of K.R.K. with visitation for David every two weeks. This interim parenting plan never went into effect, however, because the parties reconciled less than a week after it was ordered.
¶ 4 Wendy and David separated for good in April 2014. Wendy filed for another temporary order of protection in justice court, alleging continued physical and verbal abuse. David moved back to his parents' ranch near Philipsburg. He filed a motion to vacate the interim parenting plan and asked the court to grant him primary custody of K.R.K. and to enter an order prohibiting Wendy from relocating to Roundup during the proceedings. David alleged that Wendy had mental health issues, had threatened to leave and take K.R.K. to Roundup, and had assaulted him with a shotgun. The District Court granted David's motion.
¶ 5 In June 2014, the parties filed a stipulated interim parenting plan, which the court adopted without analysis. This plan required Wendy and David to exchange K.R.K. every forty-eight hours and prohibited either of them from removing K.R.K. "from Anaconda-Deer Lodge County or contiguous counties" without written approval from the other party or the court. As part of the interim parenting plan, the ***542 parties also agreed to undergo a mental health evaluation with the same therapist and comply with all recommendations.
¶ 6 Dr. Paul Silverman evaluated Wendy and David between July 2014 and February 2015. He conducted extensive psychological testing of both, reviewed records, and interviewed multiple friends, family, and acquaintances. Dr. Silverman discussed each party's prior relationships. Before marrying David, Wendy was married for over twenty years and had four daughters from that relationship. Wendy reported that her first husband was verbally, physically, and sexually abusive. Soon after Wendy began living with David, her daughters from her first marriage left to live with their father in Roundup and refused to return. David also was married *81 previously. He reported that his adult daughter from that marriage falsely accused him of abusing her and that they remained estranged. In an extensive fifty-one-page report, Dr. Silverman recommended that K.R.K. reside with Wendy while having visits with David, citing Wendy's superior parenting skills among other reasons. Anticipating Wendy's move to Roundup, Dr. Silverman wrote that Wendy's "decision to move [K.R.K.] from the Deer Lodge area to Roundup is irrelevant to this conclusion."
¶ 7 David sought a second evaluation from Dr. William Stratford. Dr. Stratford submitted a three-page letter in November 2015, disagreeing with Dr. Silverman's assessment and opining that a co-parenting relationship could be established with K.R.K. spending two weeks with David on his parents' ranch and two weeks with Wendy in Roundup. Dr. Stratford emphasized the stabilizing factor that David's parents played in K.R.K.'s life. In his letter, Dr. Stratford stated that "Wendy has had problems sustaining herself economically and emotionally outside of a relationship with a man," and that "unchecked, she may 'solve' her problems by yet another relationship."
¶ 8 On March 4, 2016, the District Court held a hearing on the final parenting plan at which both parties appeared with counsel. Only Dr. Silverman and Dr. Stratford were called as witnesses. At the hearing, Dr. Stratford explained that he had changed his opinion and that he recommended the two week/two week schedule only if Wendy remained in the Anaconda area. He opined that Roundup was a virtual unknown and that K.R.K. deserved to be in a safe environment with very few miles of transit between the homes. He stated that if Wendy were to relocate to Roundup, the child should stay in the Anaconda area, where she has extended family to provide stability and security.
¶ 9 At the hearing, Dr. Silverman opined that a two week/two week schedule is not developmentally appropriate for children in K.R.K.'s age range and could lead to attachment difficulties. In Dr. Silverman's ***543 opinion, K.R.K. needed a primary parent and the court needed to determine which of the two parents was the best choice for that role. Dr. Silverman recommended Wendy as the best choice because she was more nurturing than David. Further, Dr. Silverman opined that David had a history of being controlling in his past relationships and had demonstrated misjudgment by making multiple claims of child abuse against Wendy that went unsubstantiated by Child Protective Services ("CPS"), physicians, and the sheriff's office. Dr. Silverman explained that familiarity was important for K.R.K.
¶ 10 At the end of the hearing, the District Court expressed that it did not know how it was going to determine a final parenting plan on the limited record before it. The only evidence presented was from two conflicting experts. At David's suggestion, the District Court recessed to allow the parties to attempt mediation. The parties were not able to reach agreement.
¶ 11 After the hearing, David's parents evicted Wendy from the house near Deer Lodge. Under a temporary investigative authority order from the District Court, CPS amended the interim parenting plan, allowing Wendy to move to a house that she owned in Roundup and changing to weekly exchanges of K.R.K. between the households. The court adopted this temporary parenting agreement in July 2016. Both parties stipulated, however, that this plan was not in K.R.K.'s best interest on a long-term basis.
¶ 12 In September 2016, the parties filed a stipulated motion to release unredacted records from CPS to the parties. The Court ordered the release, but rescinded the order in December 2016 after reviewing the records in camera.
¶ 13 The District Court held a second hearing on a final parenting plan on August 4, 2017. Both parties were represented by counsel. About a week before the hearing, Wendy filed a motion for the District Court to review CPS records in camera. The court did not rule on this motion. Wendy did not attempt to admit CPS records into evidence during the hearing or call anyone from CPS to testify. David presented seven witnesses, including himself, at the hearing. David's witnesses included family, friends, and K.R.K.'s therapist in Missoula. They testified about *82 David's large extended family in the Philipsburg area, David's strong relationship with K.R.K., their concerns about K.R.K. when with Wendy and her other daughters, K.R.K.'s exposure to Wendy's ex-husband in Roundup, and the state of disrepair of Wendy's prior residence near Deer Lodge. Wendy testified on her own behalf, along with two of her daughters from her prior marriage. Wendy testified that the issues with the house in Deer Lodge existed before ***544 she and David ever moved in and provided photographs of her home in Roundup. She explained that the multiple CPS reports made against her have never been substantiated. Wendy's daughters Rebecca and Elizabeth testified that they believed their mother was a good parent and that they both had concerns about David's parenting from the brief time they lived with him at the beginning of Wendy and David's marriage.
¶ 14 The District Court entered its Findings of Fact, Conclusions of Law, Final Decree of Dissolution, and Order for Final Parenting Plan and a Final Parenting Plan in October 2017. The District Court made specific findings for each of the thirteen factors under § 40-4-212(1), MCA. The Final Parenting Plan provides that K.R.K. will reside with David and that Wendy has visitation on alternating weekends. Wendy appeals from the court's determination.
STANDARDS OF REVIEW
¶ 15 We review a district court's decision regarding child custody to determine if the court's findings are clearly erroneous. In re Marriage of Crowley , 2014 MT 42, ¶ 44, 374 Mont. 48, 318 P.3d 1031. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or our review of the evidence convinces us that the district court made a mistake." In re Marriage of Tummarello , 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28 (quoting In re Marriage of Crilly , 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151 ). When the findings are not clearly erroneous, we will affirm the court's decision unless the appellant shows that the court clearly abused its discretion. In re Marriage of Tummarello , ¶ 21. "Trial courts have broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision." In re Marriage of Crowley , ¶ 44 (citing In re Marriage of Tummarello , ¶ 34 ). We review a district court's conclusions of law for correctness. In re Parenting of C.J. , 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028.
DISCUSSION
¶ 16 Representing herself, Wendy raises numerous issues on appeal. She maintains that many of the District Court's findings of fact are clearly erroneous. She also argues that the District Court's parenting decision was not based on the best interest of the child, but rather was meant to punish her for moving back to Roundup and for pursuing a relationship with a new partner. Wendy argues that the court further ***545 erred by not considering records from CPS and by relying more heavily on Dr. Stratford's evaluation instead of Dr. Silverman's evaluation. Finally, Wendy argues that she was denied due process of law because the District Court allowed multiple withdrawals of counsel and numerous continuances and because her counsel was ineffective.
¶ 17 The District Court made 103 findings of fact. Wendy spends most of her briefing rebutting many of the District Court's findings of fact. She refutes much of the testimony provided by David's witnesses at the hearing and argues that the District Court's findings about that testimony are clear error. It is the function of the district court, however, to weigh the testimony and determine witness credibility. It is the district court that must resolve conflicts in testimony. We will not substitute our judgment for that of the district court on such issues. See, e.g. , In re Marriage of Abrahamson , 278 Mont. 336, 342, 924 P.2d 1334, 1338 (1996).
¶ 18 Wendy challenges other findings of the District Court for being unsupported by the record before it. We have reviewed the record and agree that it does not support some of the District Court's findings, which the court appears to have adopted verbatim from David's proposed *83 findings of fact and conclusions of law.[1] Some of the errors are minor discrepancies-such as misspelling witnesses' names-and some are more substantive. More substantively, the record does not support that Dr. Stratford testified that Wendy's residence near Deer Lodge was "filthy" and "rodent-infested," rather, he testified that it was "disheveled and broken down." Dr. Stratford did not recommend that Wendy find a new residence. Dr. Silverman did not say on cross-examination that Wendy's daughters chose to reside with their father, but did discuss her daughters' living arrangements in depth in his written report. Dr. Silverman did not say during cross-examination that Wendy destroyed documents or concealed them from David, but he did acknowledge in his written report that Wendy had denied David access to computer and other records for use in Dr. Silverman's report. The District Court incorrectly found that Dr. Silverman had no insight how K.R.K. could be monitored by a psychotherapist in the future; rather, Dr. Silverman stated that he recommended that each parent participate in therapy separately with K.R.K. and that this could occur by a parent traveling. At the time of the second hearing, testimony ***546 from K.R.K.'s therapist in Missoula confirmed that K.R.K. also was in therapy in Roundup with Wendy. The District Court incorrectly found that Rebecca's and Elizabeth's testimony rebutted Wendy's testimony that two of her daughters, Olivia and Rebecca, lived with her in Roundup. Rebecca testified that she lived with her mother. Olivia did not testify. Elizabeth did not testify about where her sisters lived.
¶ 19 Finally, Wendy challenges the District Court's conclusion of law regarding physical abuse or risk of physical abuse under § 40-4-212(1)(f), MCA, as unsupported by evidence. The record does not support that K.R.K. was ever returned to David with burns. Nor does the record before the District Court support a finding that K.R.K. had said to several people that she gets beaten by her mother and that her mother has promised on many occasions that she will not beat her up anymore. No evidence was presented to the District Court that Wendy hit her daughter. There was testimony that K.R.K. was returned to David with bruises and scratches. And there was testimony that K.R.K. told Dr. Kim Brown-Campbell and David that Rebecca, her half-sister, hit her, but no witnesses testified that Wendy had done so. These findings, which are unsupported by the record, are in clear error and are stricken from the District Court's findings. We must determine whether substantial evidence supported the District Court's decision despite these clearly erroneous findings or whether the District Court abused its discretion.
¶ 20 A district court must determine a parenting plan "in accordance with the best interest of the child." Section 40-4-212(1), MCA. The statute requires the court to consider all relevant parenting factors, which may include the thirteen enumerated factors, in determining the best interest of the child. Section 40-4-212(1)(a)-(m), MCA. We do not require specific findings on each of the relevant enumerated factors, but we have encouraged district courts to make such findings. Woerner v. Woerner , 2014 MT 134, ¶ 15, 375 Mont. 153, 325 P.3d 1244. "The court's findings should, at a minimum, 'express the essential and determining facts upon which it rests its conclusions.' " Woerner , ¶ 15 (quoting In re Marriage of Crowley , ¶ 44 ).
¶ 21 David and Wendy have a contentious relationship and live over three hundred miles away from each other. The District Court heard considerable evidence about the parties and their families and was tasked with developing a parenting plan for a young child under these difficult circumstances. Because the district court sits in the best position to evaluate the best interest of the child, "we must presume that the court carefully considered the evidence and made the correct decision."
***547 Hood v. Hood , 2012 MT 158, ¶ 24, 365 Mont. 442, 282 P.3d 671. "Whether we would have reached the same decision as the trial court is not the standard *84 under which we review a court's order for an abuse of discretion." Woerner , ¶ 29. Rather, "[w]e review whether substantial evidence in the record supports the court's findings regardless of whether the evidence could support a different outcome as well." Woerner , ¶ 29. "[W]hen the record contains conflicting evidence, it is the function of the District Court to resolve such conflicts." In re Marriage of Abrahamson , 278 Mont. at 342, 924 P.2d at 1338 (internal quotations omitted).
¶ 22 In determining that it was in K.R.K.'s best interest to remain in the Anaconda-Deer Lodge area and to reside primarily with David, the District Court specifically addressed each of the thirteen enumerated factors, determining that the factor was irrelevant or making a specific finding regarding the factor. The court emphasized four of the factors: (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest; (d) the child's adjustment to home, school, and community; (f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and (h) continuity and stability of care. As discussed above, some of the court's findings under (f) were clearly erroneous and we will not consider them. Under (c), the court found and the testimony supported that K.R.K. had a strong bond with her father and his extended family and friends and lives on a multi-generation ranch with many family members available to her. The court expressed concern about K.R.K.'s exposure to Wendy's ex-husband, who lived only a few blocks away from her in Roundup. This concern was not unfounded given Wendy's reports to Dr. Silverman about her ex-husband and testimony that Rebecca would bring K.R.K. over to the ex-husband's house. Under (d), the court found that evidence showed K.R.K. was well-adjusted to her home and community in Philipsburg, but that it lacked evidence to support that K.R.K. was well-adjusted in Roundup. Under (h), the court concluded and the testimony David presented showed that David provided the majority of care for the child when the parties were together. The District Court found that no factors weighed in favor of Wendy.
¶ 23 The clear error standard "is a deferential one," requiring a trial court's findings to be affirmed when its "account of the evidence is plausible in light of the record viewed in its entirety." Amadeo v. Zant , 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988) (internal quotations omitted). Substantial evidence supports a district court's findings when the record contains "the amount of relevant evidence which a ***548 reasonable mind might accept as adequate to support a conclusion." Lee v. Lee , 2000 MT 67, ¶ 20, 299 Mont. 78, 996 P.2d 389 (citation omitted). Even disregarding the District Court's determination under § 40-4-212(1)(f), MCA, and its other unsupported findings, there is sufficient evidence in the record to support the District Court's remaining findings and its decision that David should be the primary residential parent of K.R.K.
¶ 24 Wendy's contentions that the District Court punished her for moving to Roundup and beginning a new relationship are not supported by the District Court's findings. The District Court did make findings of fact about Wendy's move to Roundup, including that Dr. Stratford expressed concern that he had insufficient information about Wendy's living situation in Roundup and that there was no way to monitor the care of the child in Roundup. Further, the Court acknowledged Dr. Stratford's conclusions regarding Wendy's past relationships and that Wendy was contemplating a marriage to her new boyfriend after her marriage to David was dissolved. These factual findings were made during the court's summary of the evidence presented to it at trial. Those findings were not discussed further or relied upon when the court applied the statutory factors under § 40-4-212, MCA, in determining the best interest of the child.
¶ 25 We conclude that the court did not base its decision on Wendy's decision to move or on Wendy's new relationship. The court did determine that the distance between Roundup and Philipsburg made it unfeasible for the parties to jointly parent the minor child and that the child would need to primarily reside with one parent. In choosing *85 where the child would primarily reside, the court considered and weighed the statutory factors, listing its reasoning for weighing each factor as it did. After weighing the factors, the court determined that the child should reside primarily with David, with visitation for Wendy on alternating weekends. Wendy is correct that a parent cannot be penalized for moving, but the court may consider the impact the move has on the best interests of the children. In re Marriage of Williams , ¶ 19. The District Court did not abuse its discretion in determining that the distance between the parties' residences makes it unfeasible for the parties to jointly parent K.R.K.
¶ 26 Wendy argues further that the District Court abused its discretion in not relying on records from CPS in its findings. "As a general rule, the district court is not required to make a specific finding as to each item of evidence, but only of the essential and determining factors upon which the court's conclusions rest." Moseman v. Moseman , 253 Mont. 28, 31, 830 P.2d 1304, 1306 (1992). The District Court did not err in ***549 failing to discuss in its findings of fact the CPS records it had reviewed.
¶ 27 Wendy also challenges the weight assigned to Dr. Stratford and Dr. Silverman's evaluations. The District Court is not required to adopt the recommendations from any particular expert report. Woerner , ¶ 26. Rather, the court is "entitled to evaluate the reports and testimony and adopt those recommendations it determine[s] to be in the children's best interest." In re Tummarello , ¶ 35. The District Court referenced the testimony of both Dr. Stratford and Dr. Silverman in its findings of fact. Dr. Stratford and Dr. Silverman both agreed at the first hearing that K.R.K. should reside primarily with one parent in any long-distance parenting plan. They disagreed over which parent was the better option for K.R.K.'s primary residence. Weighing this evidence and adopting recommendations in the best interest of the child was in the province of the District Court, and giving greater weight to one expert is not an abuse of discretion. See Wyo-Ben, Inc. v. Bixby , 2014 MT 334, ¶ 51, 377 Mont. 318, 339 P.3d 1255.
¶ 28 Although the District Court's findings could have been more detailed and thorough, especially in addressing Wendy's testimony and that of her adult daughters, the District Court is in the best position to listen to testimony and make a decision in the best interest of the child. The District Court did just that. It considered the relevant statutory factors and made pertinent findings. Further, the District Court took into account the young age of the child and the potential need for modification of the parenting plan as she grows up. In the Final Parenting Plan, the District Court provided that the parties will confer annually about the shared parenting agreement, and that "[a]t a minimum of every two years, the above plan may be modified to take into account the changing developmental needs of their child." The District Court did not abuse its discretion in developing a final parenting plan for K.R.K.
¶ 29 Lastly, Wendy argues that she was denied due process of law because the District Court allowed numerous withdrawals of counsel and continuances and because she was not provided effective assistance of counsel. "The essential elements of due process, however, are notice and the opportunity to be heard." In re Marriage of Robbins , 219 Mont. 130, 138, 711 P.2d 1347, 1352 (1985). Wendy has not established that the continuances or withdrawals of counsel affected Wendy's ability to attend trial or to present her evidence. A District Court's decisions to allow the withdrawal of counsel and to grant a continuance are within its discretion. See In re Marriage of Zuelke , 274 Mont. 362, 367, 909 P.2d 684, 686 (1995). Wendy has not demonstrated that the court abused its discretion in any of its rulings.
***550 ¶ 30 Finally, this case is a custody dispute between private parties. There is no right to counsel afforded in a routine parenting plan action like this one. Rather, in our system of representative litigation, civil litigants "must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P. , 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993). Wendy's ineffective assistance of counsel claims therefore fail.
*86 CONCLUSION
¶ 31 The District Court's final parenting plan is affirmed.
We concur:
JIM RICE, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.

This is a practice we have disapproved. In re Marriage of Williams , 2018 MT 221, ¶ 21, --- Mont. ----, 425 P.3d 1277. But we review the findings nonetheless to determine whether they are supported by the evidence presented. Williams , ¶ 21.