FILED

11/21/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0754

DA 22-0754

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 220N

IN RE THE MARRIAGE OF:

JOHN P. RHODES,

        Petitioner and Appellant,

   and

TRACY LABIN RHODES,

        Respondent, Appellee,
        and Cross-Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DR 18-62
                Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          John P. Rhodes, Self-represented, Missoula, Montana

      For Appellee:

          Tracy Labin Rhodes, Self-represented, Missoula, Montana

                Submitted on Briefs:  September 27, 2023

                         Decided:  November 21, 2023

Filed:

                       _____
                               Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Appellant, John Rhodes (John), appeals from the October 29, 2020 Order on Cross-Motions for Partial Summary Judgment, the November 27, 2022, Final Parenting Plan, and the November 27, 2022, Findings of Fact, Conclusions of Law, and Decree of Dissolution issued by the Fourth Judicial District Court, Missoula County. In her cross-appeal, Tracy asserts John's position on appeal establishes there was no meeting of the minds reached with regard to essential terms of the Marital Property Settlement Agreement (MPSA) such that there is no binding settlement agreement and the District Court erred in concluding there was. Tracy also cross-appeals from the May 17, 2022 Order determining the MPSA not to be unconscionable and denying Tracy attorney fees in connection with her motion. We affirm.

¶3    In dissolving their marriage, the parties have had protracted disagreements regarding distribution of their marital estate and parenting plan issues. The parties married on July 31, 2004, and subsequently had four children. The parties separated on October 22, 2017 and John filed a dissolution petition on January 26, 2018. Both parties are attorneys, each with considerable experience in practicing law.

¶4     On May 8, 2018, the parties entered into a Partial Marital and Property Settlement Agreement (PMPSA) and a Stipulated Interim Parenting Plan.  The PMPSA provided Tracy a partial distribution of the marital estate.  Specifically, the PMPSA provided Tracy "shall receive a distribution of stocks from the marital estate with the value not being less than One Hundred Thousand Dollars ($100,000) at the time of transfer."  The PMPSA also provided the parties would attend another settlement conference in September, 2018, to attempt to reach settlement on all their marital affairs.

¶5     On December 20, 2018, the parties entered into the MPSA.  The purpose of the MPSA, as stated in the agreement, was "to accomplish a just settlement of their respective property rights and otherwise set forth their respective rights, duties and obligations arising out of the dissolution of their marriage."  Exhibit B to the MPSA set forth the assets Tracy was to receive as her sole and separate property.  That exhibit states Tracy will receive, "30% of the DRIP accounts, to be proportionately allocated stock by stock within the portfolio, to include recognition of the allocation made pursuant to the Partial Marital and Property Settlement Agreement."[1]

¶6     A dispute arose as to the meaning of the MPSA relating to the DRIP accounts.  The parties filed cross motions for partial summary judgment.  John argued that the subject language meant that the partial distribution of stocks provided for in the parties' PMPSA

---

[1] Exhibit A to the MPSA set forth the assets John was to receive as his sole and separate property. That exhibit states John will receive, "DRIPS — less a transfer of 30% to be proportionately allocated stock by stock within the portfolio, to include recognition of the allocation made pursuant to the Partial Marital and Property Settlement Agreement."

would be deducted from the 30% of the DRIP accounts Tracy was to receive pursuant to the MPSA. Tracy argued the subject language meant that she would receive 30% of the DRIP accounts and in reaching this proportional division the parties were taking into consideration that she had earlier received a preliminary distribution of marital assets. Her intent and understanding of the language "to include recognition of the allocation made pursuant to the Partial Marital and Property Settlement Agreement" explains why she was only receiving 30% and not a greater percentage of the DRIP accounts. Tracy also argued that her intent and understanding were so fundamentally at odds with those asserted by John, they did not have a meeting of the minds such that the MPSA was not a binding settlement agreement and, as such, was not enforceable.

¶7 The District Court determined John's interpretation of the DRIP provisions conflicts with the expressly stated intention of the parties in entering the MPSA—"to accomplish a just settlement of their respective property rights." The District Court found that this intention, expressly stated in the MPSA, was in accordance with § 40-4-202, MCA, requiring distribution of marital property in a dissolution proceeding in a manner that is equitable to both parties. The District Court further found that other provisions of the MPSA supported Tracy's interpretation including the referenced distribution to Tracy of the Edward Jones account—noting John's interpretation would de-value the Edward Jones account by carving $100,000 out of it and treat that $100,000 as if it were part of the 30% DRIP accounts that Tracy was to receive. The District Court also determined the language "to include recognition" required no further action other than to recognize in the distribution of the total marital estate that Tracy received the prior $100,000 distribution of

4

marital assets. Finally, the District Court concluded that Tracy had not drafted the MPSA and if any ambiguity existed—which the District Court did not find—Tracy was not responsible for it. As the District Court concluded the MPSA was unambiguous, it declined to address Tracy's assertion of unconscionability.

¶8 After the District Court entered its Order on Cross-Motions for Partial Summary Judgment of October 29, 2020, Tracy brought a subsequent motion to declare the MPSA unconscionable. Tracy asserted her consent to the MPSA was derived through duress, menace, and/or undue influence and the MPSA was unconscionable because it provided for a disproportionate value of the awarded marital property. Ultimately, the court determined Tracy failed to establish duress, menace, or undue influence. The District Court also determined that although the MPSA provided a disproportionate distribution, it was not unconscionable, concluding the disparity in the distribution was in recognition of John's premarital property and his ability to generate future income with his more stable employment.

¶9 With regard to parenting plan issues, the parties reached an oral agreement on the date set for hearing of the issue. The agreement was read into the record. Not surprisingly, the parenting plans subsequently provided to the court by each of the parties, purportedly comporting with their verbal agreement, were not consistent. As such, the District Court set further hearing to address each party's proposed parenting plan and how each plan best met the parties' oral agreement, and to address any modification either party deemed appropriate based on new facts which had arisen since the date of the oral agreement. On November 27, 2022, the District Court issued its Final Parenting Plan which provided the

5

parties would continue to equally share parenting of their children on a week-on, week-off basis.

¶10    We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Marriage of Kesler*, 2018 MT 231, ¶ 15, 392 Mont. 540, 427 P.3d 77. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or our review of the evidence convinces us the district court made a mistake." *In re the Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.2d 1151. If the factual findings are not clearly erroneous, we will reverse only if there has been an abuse of discretion. *Crilly*, ¶ 10. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. We review conclusions of law to determine if they are correct. *Kesler*, ¶ 15. We review findings of fact pertaining to a parenting plan to determine whether they are clearly erroneous. *Anderson v. Anderson*, 2014 MT 111, ¶ 11, 374 Mont. 526, 323 P.3d 895. "'Trial courts have broad discretion when considering the parenting of a child,' and we will not disturb the court's decision absent a clear abuse of that discretion." *In re M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. When a district court determines whether a marital property settlement agreement is not unconscionable, it engages in a discretionary action which cannot be categorized as either a finding of fact or a conclusion of law. *In re Marriage of Rolf*, 2000 MT 361, ¶ 20, 303 Mont. 349, 16 P.3d 345 (overruled on other grounds). We presume these discretionary

6

judgments are correct and will not disturb them absent an abuse of discretion. *In re Marriage of Rolf*, ¶ 20.

¶11     On appeal, it is apparent neither party is particularly happy with the agreements they made during the pendency of their dissolution, each seeking to be relieved of their agreements in one way or another. John asserts the District Court erred in interpreting the parties' MPSA. Although Tracy asserts the District Court erred in concluding the MPSA was not void or unconscionable, she asserts if the District Court did not err in finding such, the District Court correctly interpreted the MPSA. The parties' primary interpretation dispute involves interpretation of the language "30% of the DRIP accounts, to be proportionately allocated stock by stock within the portfolio, to include recognition of the allocation made pursuant to the Partial Marital and Property Settlement Agreement" contained in the parties' MPSA. The District Court interpreted that the 30% DRIP transfer provided for in the parties' MPSA was in addition to the partial distribution Tracy had already been awarded under the PMPSA. John asserts the correct interpretation is that the 30% DRIP transfer provided for in the parties' MPSA is the total amount Tracy should receive such that in satisfying this amount the partial distribution should first be deducted from the total due her and then she would receive the remaining amount. John contends that instead of following the MPSA the court resorted to equity explicitly noting such by referencing § 40-4-202, MCA. John further asserts the court failed to enforce the parties' MPSA which provided an effective date of December 20, 2018, and instead valued the parties' assets at the time of dissolution. John requests we "vacate the MPSA rulings and

7

order the MPSA 30% DRIP transfer recognizes and includes the earlier $100,000+ PMPSA transfer and order the effective date of the QDRO transfer to be December 20, 2018."

¶12 Tracy asserts the District Court properly recognized the purpose of the PMPSA was to provide for Tracy's interim and immediate needs and the purpose of the MPSA was to distribute the remaining assets in a just settlement. She asserts the District Court was correct that these two distributions were meant to be read together as comprising the total distribution package. As such, she advocates that the District Court did not abuse its discretion in interpreting the DRIP provisions of the MPSA or in determining the effective date of the QDRO transfer. Despite this, she continues to advocate that the MPSA was not a legally binding settlement agreement as the parties did not have a meeting of the minds because the element of consent was absent. She also continues to assert the MPSA is unconscionable based on the disproportionate allocation of marital assets between the parties. Tracy asserts the District Court failed to consider or address the downturn in her circumstances and that the disproportionality of the parties' economic circumstances had grown. Finally, Tracy asserts the District Court's findings and conclusions with regard to denying Tracy her attorney fees are insufficient and not saved by the record.

¶13 Courts are bound by the terms of a property settlement agreement, unless its terms are unconscionable. *Hadford v. Hadford*, 194 Mont. 518, 523, 633 P.2d 1181 (1981). As correctly noted by the District Court in its Order on Cross-Motions for Partial Summary Judgment:

> A court must interpret a contract 'as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' Mont. Code Ann. § 28-3-301. For written

8

contracts, 'the intention of the parties is to be ascertained from the writing alone if possible.' Mont. Code Ann. § 28-3-303. 'The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other.' Mont. Code Ann. § 28-3-202. 'A court has no authority to insert or delete provisions of a contract where the contract's provisions are unambiguous.' *King Res., Inc.*, ¶ 21.

Interpreting both the PMPSA and the MPSA together as required by § 28-3-203, MCA, the District Court determined the language "to include recognition" in the MPSA required no further action other than to recognize in the distribution of the total marital estate that Tracy received the prior $100,000 distribution of marital assets in addition to the distribution set forth in the MPSA. We find no error in this interpretation. Contrary to John's assertion that the District Court resorted to equity rather than following the MPSA, the District Court merely noted the express intention of the MPSA—"to accomplish a just settlement of their respective property rights"—was consistent with the equitable considerations of § 40-4-202, MCA, and the court would not adopt the property division the MPSA contemplates if it is not an equitable apportionment of the marital estate. The District Court's interpretation is consistent with the plain language of the MPSA, its expressed intention to accomplish a just settlement, and with the other provisions of the agreement.

¶14 Tracy asserts that John's appeal indicates the parties did not have a meeting of the minds such that the District Court erred in determining the MPSA was not void. In considering this argument, the District Court found that it hinged on the court finding merit in John's proposed interpretation. Finding John's interpretation lacked merit, the District Court did not consider it further. Subsequently, Tracy sought to void the MPSA asserting her consent was brought about by fraud, menace, and/or undue influence. Tracy appears

9

to have abandoned this later voidness argument based on fraud, menace, and/or undue influence, again asserting that John's appeal position establishes there was no meeting of the minds. Like the District Court, we conclude this argument hinges on this Court finding merit in John's proposed interpretation—which we do not. Thus, we need not consider it further.

¶15 Citing *In re Simpson*, 2018 MT 281, 393 Mont. 340, 430 P.3d 999, Tracy argues the MPSA is unconscionable due to its disproportionate distribution of the marital assets in favor of John. Tracy asserts the District Court failed to consider the economic circumstances of the parties. Further, Tracy asserts the District Court, in determining the MPSA was not unconscionable, failed to consider updated information that her continued decline in income, difficulty finding employment, and health issues were impacting her economic circumstances. John counters that Tracy's rendition omits critical procedural requirements and ignores other significant factors weighing on this issue. John notes after Tracy filed her motion seeking an order that the MPSA was unconscionable, her mental breakdown resulted in proceedings being recessed. Upon Tracy's return, the court ordered a briefing schedule with which John complied and Tracy, who was represented by counsel, did not. Tracy subsequently brought a motion seeking to file a reply brief which the court rejected. She then filed a "status report" which the court ultimately determined was untimely and indicated it would not consider such. John asserts this was a back-door attempt to support her motion after she missed the briefing deadline. John further notes Tracy ignored "hours and hours of mediated settlement" and her representation by an experienced, well-respected attorney. Finally, John asserts Tracy misrepresents the ruling

10

below that the District Court found them to be similarly situated and ignores the substantial assets of "$1.3/$1.4 million" she received pursuant to the MPSA.

¶16    Before the District Court, relying on *Simpson*, Tracy argued that the increased value of the stock assets since 2018 and the pandemic represent a change in circumstances warranting a determination the MPSA was unconscionable. In *Simpson*, the parties entered into a settlement agreement in November 2006, where the husband retained the majority of the assets and agreed to pay the wife a significant monthly payment until her death. The subsequent economic crash of 2008 left husband with no ability to make the monthly payments at the level provided for in the settlement agreement. This Court affirmed the district court's determination that there had been a change in circumstances rendering the settlement agreement unconscionable. The District Court determined *Simpson* to be distinguishable in that this is not a case where one party "received all of the assets invested in a volatile asset." Instead, both parties were receiving financial assets subject to market fluctuations. The District Court noted Tracy to be the only party receiving real property and that the real property had increased significantly since 2018. The assets each party was receiving were not so dissimilar to determine that market changes had unfairly advantaged or disadvantaged either party. The District Court found the parties were similarly situated in dealing with school issues during the pandemic. The District Court also noted John's more stable employment, which Tracy knew about at the time she entered into the MPSA, and recognized Tracy's difficulty in finding employment during the pandemic, while noting her education and ability to work as an attorney improved her ability to navigate the complexities of the pandemic.

11

¶17 Section 40-4-201, MCA, provides that married parties may enter into written separation agreements containing provisions for disposition of any property owned by either or both of them and that such agreements are binding upon the court unless it finds the agreement is unconscionable. The Commissioners' Note regarding this statute provides guidelines for determining whether an agreement is unconscionable:

> Subsection (b) [(2)] undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable. The standard of unconscionability is used in commercial law, where its meaning includes protection against onesidedness, oppression, or unfair surprise . . . Hence the act does not introduce a novel standard unknown to the law. In the context of negotiations between spouses as to the financial incidents of their marriage, the standard includes protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.
>
> In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party.

Section 40-4-201, MCA, *Annotations*, Comm'rs Note (2021).

¶18 We agree with the District Court that this case is distinguishable from *Simpson*. Unlike *Simpson*, there has not been a financial meltdown of the entire U.S. economy during the pendency of this dissolution. Here, the parties each received substantial assets subject to market fluctuations and the distribution of assets was made with some consideration as to the parties' premarital contributions and with full knowledge of their historically disparate earnings. By Tracy's own valuations she received over $1.4 million in assets. Finally, while John's employment was more stable than Tracy's, Tracy was in a position to secure employment as an attorney within a relatively short period of time. Although the

12

MPSA provides for a disproportionate distribution of marital assets favoring John, an unequal distribution does not equate to unconscionability. *See In re Marriage of Lawrence*, 197 Mont. 262, 273, 642 P.2d 1043 (1982). Under the totality of the circumstances as born out by the record, the District Court did not abuse its discretion in determining the MPSA was not unconscionable.

¶19 Tracy next asserts the District Court erred in not awarding her attorney fees, asserting the court's findings and conclusions to be insufficient. In denying Tracy attorney fees, the District Court noted the MPSA provided that, "Each party shall be responsible for his or her own attorney's fees and costs incurred herein." The District Court reasoned that since it determined the MPSA was not unconscionable, this provision was enforceable. Tracy asserts that despite this provision, John had previously sought attorney fees and that the court had previously ruled on the merits of his request. Citing *Vogel v. Intercontinental Truck Body, Inc.*, 2006 MT 131, ¶ 10, 332 Mont. 322, 137 P.3d 573, Tracy asserts "the court therefore, [is] judicially estopped from denying Tracy's motion based on this MPSA provision." Tracy misconstrues *Vogel*. As set forth in *Vogel*, judicial estoppel precludes *a party* from taking a position inconsistent with the party's previous judicial declarations, it does not apply to the court. The remedy for a court failing to enforce provisions of a MPSA—which is, in essence, what Tracy asserts the court previously did in determining John's prior request for attorney fees on the merits—is appeal, not arguing for judicial estoppel when the court enforces a party's agreement to her detriment in a different matter. We find no error with the District Court enforcing the MPSA to preclude Tracy's recovery of attorney fees.

¶20 In its November 27, 2022, Findings of Fact, Conclusions of Law, and Decree of Dissolution, the District Court recognized the parties had not completely addressed their obligations under the MPSA noting John had not made various distributions required of the PMPSA and had not provided Tracy with a deed to the marital home. Additionally, the court recognized that a QDRO would be needed to transfer ownership of Tracy's portion of John's 401K. John argued the valuation date for the QDRO retirement assets should be the effective date of the MPSA. The District Court determined the valuation date for the QDRO to be November 28, 2022, the date of dissolution. John contends this was reversible error. Tracy asserts that given that none of the obligations imposed by the MPSA were performed on the effective date and many of the obligations, including distribution of the bulk of the marital assets to Tracy, had still not been performed four years later, the District Court did not err in using the date of dissolution as the valuation date for the QDRO.

¶21 The District Court noted that as a general rule, the marital estate should be valued at or near the time of dissolution and further determined John's contention as to the valuation date was inconsistent with his actions and arguments. When Tracy sought the court to order John sign a deed to the house, John responded that such was premature as Tracy sought partial enforcement of the MPSA before the court had ordered the MPSA as part of the dissolution decree—in essence contending the MPSA was not effective until the court entered a decree of dissolution. Given John's actions and representations to the District Court, we find no error by the District Court in using the date of dissolution as the valuation date for the QDRO. At best, John's position is disingenuous. John cannot on the one hand refuse to transfer assets to Tracy asserting the MPSA to not be effective until

14

incorporated into a decree of dissolution, but then demand valuation of assets occur on December 20, 2018, four years prior to issuance of the dissolution decree.

¶22 Turning to the parenting plan issues, John asserts the District Court erred in adopting a Final Parenting Plan providing for 50/50 parenting of the parties' minor children. He asserts such a parenting plan is not supported by substantial credible evidence and is not in the children's best interests. He requests this Court "order full and school night custody to John, and 50/50 parenting time otherwise." Tracy contrarily asserts the District Court did not abuse its discretion in ordering a 50/50 shared parenting arrangement and that substantial credible evidence supports the District Court's determination.

¶23 John asserts that because of Tracy the children experience chronic absenteeism and tardies from school which is not in the children's best interests. He also asserts Tracy's history of a DUI, mental health issues, and bad behaviors of attempting to leverage money for custody likewise establish that it is not in the children's best interests to reside with Tracy on a 50/50 basis. The District Court recognized and considered the evidence submitted by John and carefully and thoroughly considered the best interest factors set forth in § 40-4-212, MCA. In essence, John desires that we re-weigh the evidence and substitute his interpretation of what is in the best interest of the children for that of the District Court. It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Rather, the ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented.

*In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *In re Parenting of C.J.*, ¶ 13. Here, we find the District Court's findings to be sufficiently comprehensive and pertinent to the issues and supported by the evidence presented.

¶24     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25     Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE