FILED

02/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0654

DA 25-0654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 37N

IN RE THE PARENTING OF L.D.K.-R.
and H.I.K.-R.,

JEREMIAH KENNETH ROSENBAUM,

Petitioner and Appellee,

and

CHELSIE LAEL KENNEDY,

Respondent and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDR-2019-567
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chelsie Lael Kennedy, Self-Represented, Harrisburg, Pennsylvania

For Appellee:

Jeremiah Kenneth Rosenbaum, Self-Represented, Helena, Montana

Submitted on Briefs:  February 4, 2026

Decided:  February 24, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Appellant, Chelsie Lael Kennedy (Chelsie), representing herself pro se, appeals from the District Court's Findings of Fact, Conclusions of Law and Order on Amended Parenting Plan and Final Parenting Plan issued August 14, 2025, by the First Judicial District Court, Lewis and Clark County, Montana. We affirm.

¶3     The parties were married at common law in 2016 and divorced on February 16, 2022. They have two minor children, L.D.K.-R., born in 2016, and H.I.K.-R., born in 2018. The parties had a high-conflict dissolution and, as noted by the District Court, that conflict has been ongoing since.

¶4     Chelsie, asserts the District Court's amended Final Parenting Plan and the court's findings "terminated her parental role without a fitness finding—violating her constitutional rights, statutory protections under Montana law, and basic procedural due process." She also asserts such shows "judicial bias, procedural inconsistency, and denial of ADA/VAWA mandated accommodations." In response, Appellee, Jeremiah Kenneth Rosenbaum, also representing himself pro se, asserts Chelsie's "parental rights were revoked because [she] fled the state of Montana with [the parties' children] to South Dakota." From our review of the record and the parties' briefing, neither parent appears to

have an understanding of the legal framework for amending a parenting plan nor much understanding of statutory procedures or due process requirements.

¶5 We review the underlying findings in support of a district court's decision regarding modification of a parenting plan under the clearly erroneous standard. *In re Parenting of G.M.N.*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715 (citing *Guffin v. Plaisted Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888 (*Guffin II*)). We review a district court's conclusions of law to determine if they are correct. *In re Parenting of G.M.N.*, ¶ 10 (citing *In re Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028).

¶6 In general, a parent seeking to amend a parenting plan must file a request to amend the parenting plan pursuant to § 40-4-219, MCA, and bears the burden of establishing that a change in the circumstances of the child has occurred and that the amendment is necessary to serve the best interests of the child. *In re Marriage of D'Alton*, 2009 MT 184, ¶ 11, 351 Mont. 51, 209 P.3d 251. "[A] party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof." *In re Marriage of Oehlke*, 2002 MT 79, ¶ 17, 309 Mont. 254, 46 P.3d 49 (noting that the party requesting the modification bears a heavy burden because the statute's policy is to preserve stability and continuity for the child). The court is then directed by § 40-4-219, MCA, to consider the criteria in § 40-4-212, MCA, as well in determining the child's best interests.

¶7 We review a district court's conclusions of law to determine if they are correct. *In re Parenting of C.J.*, ¶ 12 (citation omitted). It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266.

3

Rather, the ultimate test for the adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. *In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983). When analyzing the best interest factors, it is the District Court's role to untangle any conflicting evidence. *In re A.F.*, ¶ 24. Even when there is a conflict in the evidence, this Court will uphold the district court's determinations so long as there is substantial credible evidence to uphold its findings of fact and conclusions of law. *Bock v. Smith*, 2005 MT 40, ¶ 27, 326 Mont. 123, 107 P.3d 488. Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *In re Parenting of C.J.*, ¶ 13.

¶8 On December 22, 2023, Jeremiah filed a Motion to Amend Final Parenting Plan. He asserted that while in Chelsie's care the children had excessive absences from school and that Chelsie also intended to move to South Dakota.[1] At the time, the parenting plan provided for a 50/50 parenting arrangement. In response, Chelsie again expressed Jeremiah to have a history of domestic violence against her and his amendment requests to be "vexatious, retaliatory, and in direct opposition to the best interests of our offspring." She asked the court to deny the motion and schedule a hearing where she "will plan to call

---

[1] After Jeremiah filed the original petition for dissolution and the court had ordered an Interim Parenting Plan (IPP), Chelsie failed to adhere to the IPP and absconded with the children to South Dakota in July 2021. On October 1, 2021, the District Court ordered Chelsie to immediately return the children to Montana to reside with Jeremiah on a primary basis until further ordered by the court. Chelsie, however, initially failed to comply with the court order and the children were not returned to Jeremiah until October 6, 2021, pursuant to orders in Montana and South Dakota. Following a show cause hearing, the parties resumed equal shares of custody starting December 12, 2021.

professionals to the witness stand that have interacted with our children, law enforcement as well as friends and family to our minor children." She also sought some amendment of the parenting plan to require weekly therapy and modify when exchanges of the children occur.

¶9    In January 2025, the District Court appointed attorneys Morgan Dake and Morgan Pettit to serve as guardians ad litem (GALs) and ordered them to investigate the parenting situation and submit a report to the court as to recommendations for a final parenting plan. Shortly after their appointment, Chelsie again attempted to flee with the children. She was arrested in Bozeman on February 16, 2025, after she was in a motor vehicle accident with the children in her vehicle. Upon her release from jail, she took the children to South Dakota in violation of the then-existing parenting plan. Based on this incident and request by the GALs, the District Court issued an order which modified the children's living arrangement to reside with Jeremiah on a primary basis pending further order of the court.

¶10    The GALs submitted their report and parenting plan recommendations to the court on June 10, 2025. The court held a hearing on the parties' requests to amend the parenting plan on June 25, 2025, where each party testified as well as GAL Dake. The parties presented conflicting evidence as to their respective positions as to the parenting plan. Chelsie asserted she was disabled and a victim of domestic violence and, as such, was justified in not following the court's adopted parenting plan, fleeing with the children to South Dakota, and keeping information about herself and her whereabouts a secret. Jeremiah asserted Chelsie inappropriately failed to follow the parties' parenting plan, acted in ways contrary to the children's best interests, and that the children are now doing well

5

and attending school on a regular basis. Following the hearing, on August 14, 2025, the District Court issued its Findings of Fact, Conclusions of Law and Order on Amended Parenting Plan and its Final Parenting Plan from which Chelsie appeals.

¶11 From our review of the record, we find no error by the District Court. Upon the parties' requests to amend the parenting plan and in light of the contentious nature of the parties' dissolution and subsequent disagreements regarding parenting, the District Court appropriately appointed GALs pursuant to § 40-4-205, MCA. Although Chelsie asserts the GALS departed from their statutory role, other than her subjective opinion Chelsie presented no evidence of this, and the District Court found no merit to this assertion. Based on our review of the record and the testimony, report, and recommendations of the GALs, we agree with the District Court that they fulfilled their statutory requirements under § 40-4-205, MCA. The District Court appropriately determined, given Chelsie's history of non-compliance with the court's ordered parenting plan combined with her taking the children to South Dakota in violation of the parties' parenting plan, there were changes in the circumstances of the children warranting amendment of the parenting plan under § 40-4-219, MCA. The District Court comprehensively addressed the best interest factors of § 40-4-219 and § 40-4-212, MCA. Primary among those considerations was that Chelsie, for a second time, inappropriately took the children to South Dakota in defiance of the court's ordered parenting plan which is conduct the court determined was not in the best interest of the parties' children. The District Court found Chelsie willfully defied the ordered parenting plan by fleeing the state with the children. Given she had previously done the same thing and that judicial intervention was required to accomplish the return of

6

the children to Montana, and that she was warned against this behavior, the District Court concluded that it had little confidence in Chelsie following future orders. Thus, the court determined that it would be in the best interest of the children to reside on a primary basis with Jeremiah. These findings are supported by substantial evidence in the record—including the testimony of GAL Dake and Jeremiah.

¶12 The amended Final Parenting Plan adopted by the court does not terminate Chelsie's parenting role. Instead, it provides for progressive parenting of the parties' children commencing with supervised parenting and progressing from there based upon Chelsie demonstrating the ability to comply with the parenting plan on a consistent basis with progression of parenting based on input of the children's therapist, recommendation of the GALs, and approval of the court.

¶13 Chelsie makes a variety of other claims—being in the Montana Address Confidentiality program, violation of the ADA or VAWA, weaponization of criminal charges for custodial interference, parental liberty issues, children's rights, judicial bias, and the like—none of which show the District Court failed to appropriately consider and adhere to Montana's statutory provisions for amending a parenting plan.

¶14 Chelsie, in essence, seeks us to reweigh the evidence presented to agree with her perceptions. When the record contains conflicting evidence, it is the function of the district court to resolve the conflicts. *In re Marriage of Kesler*, 2018 MT 231, ¶ 21, 392 Mont. 540, 427 P.3d 77. It is the district court's function to weigh the testimony and determine witness credibility. We will not substitute our judgment for that of the district court on such issues. *In re Marriage of Kesler*, ¶ 17. Chelsie had the full opportunity to appear at

the hearing, present witnesses, cross-examine witnesses, and submit documentary evidence—she was given all the process she was due. Substantial credible evidence supports the District Court's factual findings and the District Court's conclusion of law were correct.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER